# KUSH ET AL. *v.* RUTLEDGE

No. 81–1675.  Argued January 12, 1983—Decided April 4, 1983

STEVENS, J., delivered the opinion for a unanimous Court.

*Michael L. Gallagher* argued the cause for petitioners. With him on the brief was *Michael K. Kennedy*.

*Robert Ong Hing* argued the cause and filed a brief for respondent.*

JUSTICE STEVENS delivered the opinion of the Court.

Respondent is a white football player of unknown political affiliation who seeks to recover damages under 42 U. S. C. § 1985(2) (1976 ed., Supp. V) for an alleged conspiracy to intimidate potential witnesses in a federal lawsuit. Petitioners argue that the action must be dismissed because there is no claim that the conspiracy was motivated by the kind of "racial, or perhaps otherwise class-based, invidiously discriminatory animus" we held to be necessary in *Griffin* v. *Breckenridge*, 403 U. S. 88, 102 (1971). We reject their contention, because the critical language in § 1985(3), the statute that applied to the *Griffin* conspiracy, does not apply to the violation of the first part of § 1985(2) alleged in this case.

I

The issue before us is narrow and may be briefly stated. In both federal and state tribunals, respondent Rutledge has asserted a variety of common-law and statutory claims against Arizona State University and its officials arising out of incidents that occurred while he was a member of the University's football squad. One of his claims is that three of the petitioners—the Arizona State University athletic director, head football coach, and assistant football coach—

---

*\*Charles S. Sims* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

engaged in a conspiracy to intimidate and threaten various potential material witnesses in order to prevent them from testifying "freely, fully and truthfully" in his lawsuit in federal court.[1]

The District Court granted a motion to dismiss the entire complaint on the grounds that the action was barred by the Eleventh Amendment and that respondent had failed to al-

---

[1] This is the essence of the § 1985(2) claim as described in the briefs and arguments in this Court. The Court of Appeals recognized that whether respondent had "adequately alleged a claim under the first part of section 1985(2) is a close question," but decided it in the affirmative. *Rutledge* v. *Arizona Bd. of Regents*, 660 F. 2d 1345, 1355 (CA9 1981). Under the liberal pleading rules of *Conley* v. *Gibson*, 355 U. S. 41, 47–48 (1957), the Court of Appeals properly construed the amended complaint as raising the issue presented to this Court on certiorari.

Count Five of the amended complaint, which was added two days after the filing of the original complaint in United States District Court, does not expressly allege that witnesses were intimidated in connection with a *federal*-court proceeding. It alleges in part that:

"56. On information and belief, since the time of filing the statutorily mandated claim with the Arizona Board of Regents, defendants Kush, Miller and Horton have conspired to prevent, by intimidation and threat, various material witnesses from freely, fully and truthfully testifying as to matters raised in the within complaint.

"57. On information and belief, since the time of filing the statutorily mandated claim with the Arizona Board of Regents, defendants Kush, Miller and Horton have conspired for the purpose of hindering or obstructing the due course of justice with an intent to deny the plaintiff equal protection of the laws by threatening and intimidating potential material witnesses, to prevent the plaintiff from lawfully enforcing his rights and to 'cover up' the wrongful acts of defendants Kush and Maskill." App. to Pet. for Cert. E–11 to E–12.

These allegations might appear to describe only a conspiracy to interfere with potential witnesses before the Arizona Board of Regents. But ¶ 56 reflects the specific language of the first clause of § 1985(2), which relates to witness intimidation in connection with federal proceedings, see n. 4, *infra*, whereas ¶ 57 closely follows the wording of the second clause of that provision, which applies to witness intimidation in state-court proceedings, see n. 3, *infra*. Paragraph 60 then alleges generally that § 1985(2) has been violated by the defendants. Thus ¶ 56 of the complaint can fairly be read as alleging a conspiracy related to federal judicial proceedings.

lege a violation of his civil rights. It concluded that respondent had failed to state a § 1985 claim because he had not shown that he was a member of an identifiable class, and because his general allegations of a conspiracy were unsupported by specific facts. App. to Pet. for Cert. A–2. The Court of Appeals affirmed the dismissal of all claims against the University and its Board of Regents and of the vicarious liability claims against petitioner Miller, remanded for further proceedings on the other state-law tort claims against petitioners, and affirmed the dismissal of all federal civil rights claims against petitioners except the one at issue here. *Rutledge* v. *Arizona Bd. of Regents,* 660 F. 2d 1345 (CA9 1981).[2]

The Court of Appeals construed respondent's allegations of witness intimidation, see n. 1, *supra,* as containing two components—obstruction of justice at the state level, and interference with federal litigation. The former was not actionable under the second part of § 1985(2),[3] the court held, because "there exists no sufficient allegation of racial or class-based invidiously discriminatory animus." 660 F. 2d, at 1355. The court acknowledged that this Court's decision in *Griffin* v. *Breckenridge, supra,* had interpreted a portion of § 1985(3) to include such a requirement in order to avoid the constitutional issues that would have attended enactment

---

[2] The Court of Appeals concluded:

"On remand the district court may wish to require the appellant to amend Count Five to make more particular his allegations under part one of section 1985(2) and to eliminate those allegations pertaining to the second part of that section. Nothing in this opinion should be construed to prevent this course of action." 660 F. 2d, at 1355.

[3] The second portion of § 1985(2) provides:

"[O]r if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, *with intent to deny to any citizen the equal protection of the laws,* or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . ." (emphasis added).

of a general federal tort law. It decided that the same principles applied to claims based on private conspiracies to obstruct justice in state-court proceedings.

But the Court of Appeals concluded that no allegations of class-based animus were required under the first part of § 1985(2), which proscribes intimidation of witnesses in the federal courts.[4] It relied on the plain language of the Civil Rights Act of 1871 and on the legislative history. Noting the Federal Government's unquestioned constitutional authority to protect the processes of its own courts, and the absence of any need to limit the first part of § 1985(2) to avoid creating a general federal tort law, the Court of Appeals declined to impose the limitation set forth in *Griffin* v. *Breckenridge.* 660 F. 2d, at 1355.

Because other Circuits have read the first part of § 1985(2) more narrowly, see *Kimble* v. *D. J. McDuffy, Inc.*, 648 F. 2d 340, 346–348 (CA5) (en banc), cert. denied, 454 U. S. 1110 (1981); *Jones* v. *United States*, 536 F. 2d 269, 271 (CA8 1976), cert. denied, 429 U. S. 1039 (1977), we granted certiorari limited to the question of statutory construction, 458 U. S. 1120 (1982). As have the Courts of Appeals for the District of Columbia Circuit, *McCord* v. *Bailey*, 204 U. S. App. D. C. 334, 345, 636 F. 2d 606, 616 (1980), cert. denied, 451 U. S. 983 (1981), and the Third Circuit, *Brawer* v. *Horowitz*, 535 F. 2d 830, 840 (1976), we agree with the Ninth Circuit's analysis.[5]

---

[4] The first part of § 1985(2) provides:

"If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror . . . ."

[5] Our limited grant of certiorari does not encompass the question whether the alleged conspiracy to interfere with witnesses gave rise to any recov-

## II

The statutory provision that is now codified as § 1985 of Title 42 of the United States Code was originally enacted as § 2 of the Civil Rights Act of 1871, 17 Stat. 13. The length and style of § 2 of the 1871 Act, reprinted in full as an Appendix to this opinion, make it somewhat difficult to parse. Nevertheless, if its several components are carefully identified, its meaning becomes clear.

Although § 2 contained only one long paragraph when it was originally enacted, that single paragraph outlawed five broad classes of conspiratorial activity. In general terms, § 2 proscribed conspiracies that interfere with (a) the performance of official duties by federal officers; (b) the administration of justice in federal courts; (c) the administration of justice in state courts; (d) the private enjoyment of "equal protection of the laws" and "equal privileges and immunities under the laws"; and (e) the right to support candidates in federal elections. As now codified in § 1985, the long paragraph is divided into three subsections. One of the five classes of prohibited conspiracy is proscribed by § 1985(1), two by § 1985(2), and two by § 1985(3). The civil remedy for a violation of any of the subsections is found at the end of § 1985(3). The reclassification was not intended to change the substantive meaning of the 1871 Act.[6]

Three of the five broad categories, the first two and the fifth, relate to institutions and processes of the Federal Government—federal officers, § 1985(1); federal judicial proceedings, the first portion of § 1985(2); and federal elections, the second part of § 1985(3). The statutory provisions dealing

---

erable damages. This issue remains open for consideration by the District Court on remand from the Court of Appeals.

[6] When Congress passed legislation in 1874 to consolidate and collect all federal statutes and laws in the Revised Statutes, 18 Stat. 113, it expressed no intention to change the meaning of the laws, although minor changes in language were made to accommodate the consolidation. Cf. *Pott* v. *Arthur*, 104 U. S. 735, 736 (1881).

with these categories of conspiratorial activity contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws. Nor was such language found in the corresponding portions of § 2 of the 1871 Act. See Appendix to this opinion.[7]

The remaining two categories, however, encompass underlying activity that is not institutionally linked to federal interests and that is usually of primary state concern. The second part of § 1985(2) applies to conspiracies to obstruct the course of justice in state courts, and the first part of § 1985(3) provides a cause of action against two or more persons who "conspire or go in disguise on the highway or on the premises of another."[8] Each of these portions of the statute contains language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws.

This limiting language was construed in *Griffin* v. *Breckenridge*, 403 U. S. 88 (1971), a case in which a unanimous Court held that § 1985(3) applies to purely private conspiracies. In explaining why that holding would not create an open-ended federal tort law applicable "to all tortious, conspiratorial interferences with the rights of others," *id.*, at 101, we expressly stated:

---

[7] Although the provisions dealing with interference with federal judicial proceedings and state judicial proceedings now appear together in § 1985(2), they were separated by other material in the original version of § 2. See Appendix to this opinion.

[8] For the second clause of § 1985(2), see n. 3, *supra*. The first portion of § 1985(3), which actually contains two separate clauses, reads as follows:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, *for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;* or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . ." (emphasis added).

"The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Id.*, at 102.

Although *Griffin* itself arose under the first clause of § 1985(3), petitioners argue that its reasoning should be applied to the remaining portions of § 1985 as well. We cannot accept that argument for three reasons. First, the scope of the *Griffin* opinion is carefully confined to "the portion of § 1985 (3) now before us," *id.*, at 99; see also *id.*, at 102, n. 9. There is no suggestion in the opinion that its reasoning applies to any other portion of § 1985. Second, the analysis in the *Griffin* opinion relied heavily on the fact that the sponsors of the 1871 bill added the "equal protection" language in response to objections that the "enormous sweep of the original language" vastly extended federal authority and displaced state control over private conduct. *Id.*, at 99–100. That legislative background does not apply to the portions of the statute that prohibit interference with federal officers, federal courts, or federal elections. Third, and of greatest importance, the statutory language that provides the textual basis for the "class-based, invidiously discriminatory animus" requirement simply does not appear in the portion of the statute that applies to this case. See n. 4, *supra*.

Given the structure of § 2 of the 1871 Act, it is clear that Congress did not intend to impose a requirement of class-based animus on persons seeking to prove a violation of their rights under the first clause of § 1985(2).[9] The legislative

---

[9] We are unpersuaded by petitioners' argument that a contrary conclusion is required because the authorization of remedies found at the end of § 1985(3) applies to the entire section. The location of the remedial language merely confirms our view that the meaning of any part of § 1985 is informed by its entire text.

history supports the conclusion we have drawn from the language of the statute. Protection of the processes of the federal courts was an essential component of Congress' solution to disorder and anarchy in the Southern States. Neither proponents nor opponents of the bill had any doubt that the Constitution gave Congress the power to prohibit intimidation of parties, witnesses, and jurors in federal courts.[10]

The judgment of the Court of Appeals is

*Affirmed.*

## APPENDIX TO OPINION OF THE COURT

Section 2 of the 1871 Civil Rights Act, 17 Stat. 13 (emphasis supplied).

"That if two or more persons within any State or Territory of the United States shall conspire together to overthrow, or to put down, or to destroy by force the government of the United States, or to levy war against the United States, or to oppose by force the authority of the government of the United States, or by force, intimidation, or threat to prevent, hinder, or delay the execution of any law of the United States, or by force to seize, take, or possess any property of the United States contrary to the authority thereof, or by force, intimidation, or threat to prevent any person from accepting or holding any office or trust or place of confidence under the United States, or from discharging the duties thereof, or by force, intimidation, or threat to induce any officer of the United States to leave any State, district, or place where his duties as such officer might lawfully be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or to injure his

---

[10] See Cong. Globe, 42d Cong., 1st Sess., 486 (1871) (remarks of Rep. Cook, supporter); *id.*, at App. 220 (remarks of Sen. Thurman, opponent). The legislative history is discussed accurately and persuasively by the Court of Appeals for the District of Columbia Circuit in *McCord* v. *Bailey*, 204 U. S. App. D. C. 334, 345, 636 F. 2d 606, 615–617 (1980), cert. denied, 451 U. S. 983 (1981).

person while engaged in the lawful discharge of the duties of his office, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duty, *or by force, intimidation, or threat to deter any party or witness in any court of the United States from attending such court, or from testifying in any matter pending in such court fully, freely, and truthfully, or to injure any such party or witness in his person or property on account of his having so attended or testified,* or by force, intimidation, or threat to influence the verdict, presentment, or indictment, of any juror or grand juror in any court of the United States, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or on account of his being or having been such juror, or shall conspire together, or go in disguise upon the public highway or upon the premises of another for the purpose, either directly or indirectly, of depriving any person or any class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State from giving or securing to all persons within such State the equal protection of the laws, *or shall conspire together for the purpose of in any manner impeding, hindering, obstructing, or defeating the due course of justice in any State or Territory, with intent to deny to any citizen of the United States the due and equal protection of the laws, or to injure any person in his person or his property for lawfully enforcing the right of any person or class of persons to the equal protection of the laws,* or by force, intimidation, or threat to prevent any citizen of the United States lawfully entitled to vote from giving his support or advocacy in a lawful manner towards or in favor of the election of any lawfully qualified person as an elector of President or Vice-President of the United States, or as a member of the Congress of the United States, or to injure any such citizen in his person or property on account of such support or advocacy, each and every person so offending

shall be deemed guilty of a high crime, and, upon conviction thereof in any district or circuit court of the United States or district or supreme court of any Territory of the United States having jurisdiction of similar offences, shall be punished by a fine not less than five hundred nor more than five thousand dollars, or by imprisonment, with or without hard labor, as the court may determine, for a period of not less than six months nor more than six years, as the court may determine, or by both such fine and imprisonment as the court shall determine. And if any one or more persons engaged in any such conspiracy shall do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby any person shall be injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the person so injured or deprived of such rights and privileges may have and maintain an action for the recovery of damages occasioned by such injury or deprivation of rights and privileges against any one or more of the persons engaged in such conspiracy, such action to be prosecuted in the proper district or circuit court of the United States, with and subject to the same rights of appeal, review upon error, and other remedies provided in like cases in such courts under the provisions of the act of April ninth, eighteen hundred and sixty-six, entitled 'An act to protect all persons in the United States in their civil rights, and to furnish the means of their vindication.'"