**Elmer Horrach IRIZARRY, et al., Plaintiffs, Appellees,**

v.

**Hon. Carlos QUIROS, etc., Defendant, Appellee.**

**Garden State Service Cooperative Association, Inc., et al., Defendants, Appellants.**

**No. 81–1226.**

United States Court of Appeals, First Circuit.

Argued Sept. 16, 1983.

Decided Nov. 30, 1983.

Oronte Oliveras Sifre, Hato Rey, P.R., with whom Agrait & Oliveras, Hato Rey, P.R., was on brief, for appellants.

Luis N. Blanco Matos, Hato Rey, P.R., for appellees.

* Of the Federal Circuit, sitting by designation.

Before BOWNES, Circuit Judge, ALDRICH and COWEN *, Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

Defendant Glassboro Service Association (Glassboro), a New Jersey corporation, is engaged in the business of furnishing farmworkers to growers in New Jersey, Pennsylvania, and a number of other states. Defendant Garden State Service Cooperative Association (Garden State), also a New Jersey corporation, is engaged in recruiting, hiring, and arranging for the transportation, of farmworkers from Puerto Rico for a number of suppliers, including Glassboro. Both are registered as farm labor contractors under the Farm Labor Contractor Registration Act, 7 U.S.C. § 2041 *et seq.* (FLCRA) (as amended, Migrant and Seasonal Agricultural Worker Protection Act, 1983, 29 U.S.C. § 1801 *et seq.*). Plaintiffs Horrach Irizarry and Sanchez Surillo brought a class action on behalf of themselves and others similarly situated against said defendant corporations, hereinafter defendants, and certain officers thereof, under the FLCRA and the Civil Rights Act, 42 U.S.C. § 1985, for refusing, and conspiring to refuse, to hire them, and for discriminating against them because they had filed complaints against defendants under the FLCRA, the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the Occupational Safety and Health Act, 29 U.S.C. § 651 *et seq.* After extensive findings, all of which appear well warranted, the court entered judgment for actual damages in favor of the above named plaintiffs; punitive damages, to be paid to Puerto Rico Legal Services, Inc., Migrant Worker Division; injunctive relief, and counsel fees. We affirm.

Briefly, defendants kept lists, or a Book, of the names of prior workers, followed by initials, some of which stood for negative descriptions, such as "alcoholic," "too old," "medical," "mental," and "chronic complainer." These lists were used openly and could be seen by applicants, including, for

their possible guidance, applicants who had not yet earned the endorsements. One of the sets of initials was ULA. Although it was shown that this designation corresponded with workers who had filed complaints against defendants through federally funded legal service programs, that recruiters uniformly rejected applicants so marked, and that this process had gone on for years, defendants' witnesses professed total ignorance of any relationship. In finding that ULA meant unsatisfactory because of having brought legal actions, the court stated,

> "I find it incredible that these witnesses for the defendant come here and say they don't know what [ULA] means.
>
> "Nobody can admit that they had any part in dreaming it up nor putting it together; nor would they admit to any understanding of what it actually meant as it was used in the Book and applied to these workers."

Defendants' only response, apart from their asserted ignorance, was that some of these workers later came to be hired through unrelated channels. We can only think it naive to think that any court would credit this excuse. It is equally naive to think that we would, on appeal, accept this response, rejected by the court as irrelevant, by concluding that the court was clearly erroneous. Indeed, on the record, we must label defendants' persistent attempt to make this claim inexcusably frivolous. *Cf.* F.R.Civ.P. 11.

■ Defendants contend that, in any event, the court erred in awarding punitive damages and attorneys' fees. These were assessed as incidents to a judgment under 42 U.S.C. § 1985. Defendants challenge the court's findings of a "conspiracy," and that defendants invidiously discriminated against a "class." We need not, however, address whether class-based discrimination existed here; it is not required.

In holding that plaintiffs established the necessary elements of a section 1985 claim, the court did not designate which subsection. We find applicable subsection (2). The first clause of this subsection [1] prohibits conspiracies "to injure" a party or witness in the United States courts "in his person or property on account of his having . . . attended or testified." Last term, in *Kush v. Rutledge*, 1983, —— U.S. ——, ——, 103 S.Ct. 1483, 1488, 75 L.Ed.2d 413, the Supreme Court held that class-based discrimination was not a necessary element of a claim under this clause. The Court's decision rested on the plain language of the statute and on the premise that congressional power therefor arose not from the fourteenth amendment and notions of equality, but, rather, from specific federal power to protect the processes of federal courts and the exercise of federal rights. *Kush,* ante, —— U.S. at —————, 103 S.Ct. at 1486–87; see also *McCord v. Bailey,* D.C.Cir., 1980, 636 F.2d 606, 615–17, cert. denied, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839.

The instant facts fall within section 1985(2)'s prohibitions. Plaintiffs have proved that they were denied reemployment because they previously had instituted legal actions to vindicate their federal rights. Defendants' conduct was obviously designed to intimidate and deter, and plaintiffs clearly were "injured" in their "person or property." "Property" here must include any economic damage that would be recognized in an ordinary tort suit. Nor can there be any question of the general power of Congress in this area. If, as must be the fact, the commerce power supports the FLCRA, it must equally justify penalizing those who would restrain its exercise by

---

1. The first clause reads,

    (2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror;
    . . . ."

retaliation. *Cf. Griffin v. Breckenridge,* 1971, 403 U.S. 88, 104, 91 S.Ct. 1790, 1799, 29 L.Ed.2d 338 (under section 1985(3), congressional power to reach private conspiracies should be judged on the facts of each case). Without such a right, the primary federal right could be nullified.

■ Nor are we concerned that certain federal statutes already provide remedies for such injury. *See, e.g.,* Labor Management Relations Act, 1935, section 8(a)(1) (unfair labor practice to interfere with exercise of section 7 rights); Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a) (unlawful employment practice to discriminate against someone for participating in enforcement proceedings); Migrant and Seasonal Agricultural Worker Protection Act, ante, 29 U.S.C. § 1855 (prohibiting discrimination for filing suit under the act). Passing any question of double recovery, this is not improper duplication. First, subsection 1985(2) applies to "conspiracies," not to individual actions, and second, the Civil Rights Acts often parallel federal statutory rights. *See Maine v. Thiboutot,* 1980, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555.

The Supreme Court's decision in *Great American Federal S. & L. Ass'n v. Novotny,* 1979, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957, holding that Title VII rights are not also remediable under section 1985(3), is inapplicable. The *Novotny* holding was limited to Title VII, and the concern was that the complex remedial scheme of Title VII might be eviscerated. *Id.* at 372–76, 99 S.Ct. at 2349–51. In addition, the Court emphasized that section 1985(3) was only "remedial"—it created no substantive rights. *Id.* at 372, 376–78, 99 S.Ct. at 2349, 2351–52. In contrast, the Farm Laborer Act's remedial scheme is hardly as complex. And section 1985(2) *does* create substantive rights; we deal here with the scope of those rights. *See Kush,* ante, —— U.S. at ——, 103 S.Ct. at 1486.

■ In challenging the district court's finding of a conspiracy, defendants cite cases holding that employees of a single corporation, acting within the scope of their employment, cannot "conspire" for section 1985 purposes. *E.g., Girard v. 94th St. and Fifth Ave. Corp.,* 2 Cir., 1976, 530 F.2d 66, 70–71, *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798; *Dombrowski v. Dowling,* 7 Cir., 1972, 459 F.2d 190, 196. These holdings are based on the common law conception of a corporation as a single entity acting with one purpose. Defendant's reliance on these cases is misplaced. Here there were two corporations, Garden State and Glassboro, who were named defendants and who were engaged in the discriminatory activities. And, although there was evidence that one individual held important positions in both corporations and although Garden State acted for some purposes as Glassboro's agent, it is equally clear that the corporations were separate business entities, under separate management, performing separate functions, not exclusively for each other.[2]

■ Plaintiff, having established a valid claim under subsection 1985(2), may be awarded attorneys' fees and punitive damages. *See* 42 U.S.C. § 1988; *Smith v. Wade,* 1983, —— U.S. ——, ——, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (punitive damages available under section 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"). The evidence fully supported the punitive damage award, and, where the statute permits both punitive damages and attorney's fees, the decision in *Cordeco Development Corp. v. Santiago Vasquez,* 1 Cir., 1976, 539 F.2d 256, *cert. denied,* 429 U.S. 978, 97 S.Ct. 488, 50 L.Ed.2d 586, holding this duplicative, is inapplicable. The judgment is affirmed in all respects. Plaintiffs are awarded double costs on this appeal because

---

**2.** This analysis should not be taken as agreeing that officers of a single corporation cannot conspire for section 1985 purposes. We note the Third Circuit's unanimous decision in *Novotny v. Great American Federal S. & L. Ass'n,* 3 Cir., 1978, 584 F.2d 1235, 1256–59 (en banc), *rev'd on other gr'ds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957, rejecting that rule. *See also* Note, Intracorporate Conspiracies Under 42 U.S.C. § 1985(c), 92 Harv.L.Rev. 470, 476–77 (1978).

of defendants' persistence in attempting frivolous evidentiary defenses, said costs to be charged personally against defendants' counsel; F.R.A.P. 38; 28 U.S.C. § 1927, and attorney's fees on appeal, chargeable against defendants, in an amount to be determined by us upon due submission.