**Tommie PENRY**

v.

**The HARTFORD FIRE INSURANCE COMPANY, et al.**

**Civ. A. No. B–86–1362–CA.**

United States District Court, E.D. Texas, Beaumont Division.

June 11, 1987.

Joseph R. Steele, Smith, Cable & Steele, Houston, Tex., for plaintiff.

Jim C. Ezer, Houston, Tex., for Hartford.

Paul E. Anderson, Jr., Houston, Tex., for Illinois.

David E. Bernsen, Beaumont, Tex., Robert Q. Keith, Johnson City, Tex., for Liberty.

William K. Luyties, Houston, Tex., for Allinsurance.

Hollis Horton, Beaumont, Tex., for O'Dell.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

This is essentially a state law wrongful discharge suit, alleging as a basis for federal jurisdiction, violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961, et seq., and 42 U.S.C. § 1985(2). Before this court are defendants' motions to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. For the reasons that follow, defendants' motions are granted.

### BACKGROUND

From August 17, 1977, until August 8, 1986, Tommie Penry worked for Liberty Forge, Inc. In May of 1985, Penry injured his back, filed a claim for workers' compensation, which was settled a year later with Liberty Forge's then workers' compensation carrier, the Hartford Fire Insurance Company.

After his May 1985 injury, Penry requested an investigation by the Occupational Safety & Health Administration (OSHA). Pursuant to this request, an OSHA investigator visited the premises of Liberty Forge and later issued a report. On April 30, 1986, Penry sustained another injury for which he is now receiving workers' compensation benefits. Penry did not return to work after this injury, and was discharged

on August 8, 1986. On August 14, 1986, Liberty Forge informed Penry formally by letter dated August 8, and by telephone of its decision to terminate him because of "economic reasons."

## I. RICO

In order to be liable in a civil matter under the RICO statute, a defendant must (1) participate (2) in the affairs of an "enterprise," (3) through a "pattern" of (4) "racketeering activity." Under 18 U.S.C. § 1961(5), a "pattern of racketeering activity" includes at least two acts of "racketeering activity," and racketeering activity is defined in § 1961 as "any act, including mail or wire fraud, which is indictable" under certain enumerated federal criminal statutes. The defendants contest the validity of Penry's RICO allegations in essentially two respects: (1) Penry has not properly pleaded the occurrence of at least two acts of racketeering activity and (2) assuming Penry has properly pleaded the predicate racketeering acts, he has nonetheless failed to allege a "pattern of racketeering activity."

### (a) Pleading of Racketeering Acts

To satisfy this threshold requirement, Penry alleges two communications which he contends constitute mail and wire fraud: The phone call of August 14, informing him that Liberty Forge had fired him; and the letter he received on August 14 (dated August 8), informing him that Liberty Forge had fired him. These communications amount to fraud, Penry contends, because the real reason Liberty Forge fired him was in retaliation for his workers' compensation claims and OSHA complaints, and not as he was told over the wire and through the mails, for "economic reasons."

To prove mail or wire fraud, the plaintiff must allege (1) a scheme to defraud; and (2) the use of the mails or wire communications in furtherance of the scheme. Fraud consists of a false representation or material nondisclosure reasonably calculated to deceive persons of ordinary prudence and comprehension. *United States v. Shaffer,* 599 F.2d 678 (5th Cir.1979), *per curiam*

(mail fraud). Assuming the truth of Penry's allegations, as the court must for purposes of this motion to dismiss, it is clear that Penry has failed to allege an indictable offense under the mail and wire fraud statutes.

First, assuming the existence of a scheme to defraud, it is apparent from the face of the complaint that the mails or wire communications were not used "in furtherance" of the alleged scheme. Since Penry was fired August 8, the goal of the alleged scheme had already been accomplished, and the phone call and letter he received on the 14th of August could not have facilitated the scheme. Second, Penry's complaint fails to allege a false representation or material nondisclosure reasonably calculated to deceive him. Penry was not tricked out of his job. No misapprehension could have arisen as to Liberty Forge's wishes. If Liberty Forge had informed Penry that pursuant to a conspiratorial agreement with the other defendants, he was being discharged in retaliation for his workers' compensation claims and OSHA complaints, the result would nevertheless be the same: Penry would have no job with Liberty Forge. The alleged misrepresentation on the part of the defendants did not induce Penry to do anything or refrain from doing anything. Although Penry's complaint suggests a lack of candor about the circumstances leading to his termination, the allegations do not show a scheme to defraud.

Accordingly, Penry's RICO claims must be dismissed because he fails to allege at least two predicate acts of racketeering activity pursuant to 18 U.S.C. 1961.

## II. PATTERN OF RACKETEERING ACTIVITY

Dismissal is warranted in this case for the foregoing reasons alone. However, even if Penry could plead two predicate acts of racketeering activity, the court would nevertheless be required to dismiss his complaint because he fails to allege a "pattern of racketeering activity."

The Supreme Court has challenged lower courts to develop a more rigorous interpre-

tation of the RICO pattern requirement. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, n. 14, 105 S.Ct. 3275, 3285, n. 14, 87 L.Ed.2d 346 (1985). More recently, the Fifth Circuit has also directed its lower courts to do the same. *Smoky Greenhaw Cotton Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 785 F.2d 1274, 1280, n. 7 (5th Cir.1986); *Armco Industrial Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475, 478 (5th Cir.1986). There are essentially three approaches taken in the courts as to what constitutes a pattern of racketeering activity. At one extreme are the more restrictive cases requiring the RICO plaintiff to show that the defendant was engaged in multiple illegal schemes to satisfy the pattern requirement. *Superior Oil Co. v. Fulmer*, 785 F.2d 252 (8th Cir. 1986). Under this approach, a defendant who commits a series of acts in furtherance of a single scheme is not liable. The plaintiff must show that the defendant was engaged in similar criminal schemes elsewhere in order to show the required pattern of racketeering activity. *Fulmer*, at 257. At the other end of the spectrum are cases requiring nothing more than two related predicate acts. *Systems Research, Inc. v. Random, Inc.*, 614 F.Supp. 494 (N.D.Ill.1985). Recently, a number of courts, whose reasoning this court finds persuasive, have adopted a compromise position which requires the RICO plaintiff to prove that the defendant was engaged in multiple criminal episodes. *Louisiana Power & Light v. United Gas Pipeline*, 642 F.Supp. 781 (E.D.La.1986). Under this approach, the RICO plaintiff must show that the defendant's conduct constituted related multiple and ongoing criminal episodes, each with a significant harmful effect. *Louisiana Power* at 809. Although there is no clear definition of the term "multiple criminal episodes," at a minimum, it requires "that the defendant must harm the plaintiff more than once—it must have committed acts which are ongoing, and which have an independent and repeated harmful significance for the plaintiff." *Louisiana Power*, at 809. This approach places a lesser burden on the RICO plaintiff than do cases like *Fulmer*, which

hold that a defendant who commits a series of acts in furtherance of one criminal scheme cannot be sued under RICO. Conversely, this approach is more consistent with the ordinary meaning of the term "pattern." While the court is mindful of the admonition that the RICO statute is to be "liberally construed to effectuate its remedial purposes," *Sedima, SPRL v. Imray Co.*, 473 U.S. 498, 105 S.Ct. at 3286, 87 L.Ed.2d 346 (1985), and that its scope is "breathtaking," *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1365 (5th Cir.1985), the court is equally aware of the need to curb the type of civil RICO abuse which this case epitomizes.

■ Thus, applying the law to the facts of this case, the court finds that Penry fails to properly allege a pattern of racketeering activity. Penry's discharge from employment constitutes a single transaction, and the alleged acts of mail and wire fraud are merely elements of a single unified activity. Assuming that Penry has alleged the necessary predicate offenses, he has nevertheless failed to allege any threat of continuing activity. There is a distinct and easily defined beginning and end to the transaction at issue here, and all the alleged predicate offenses are merely part of the single transaction. Any fraud surrounding Penry's discharge from employment must be viewed as a single criminal episode, not constituting a scheme to defraud under RICO.

### SECTION 1985(2)

■ Penry alleges the defendants conspired to obstruct justice in violation of § 1985(2) by discharging him in retaliation for his worker's compensation claims and OSHA complaints.

The first part of 1985(2) proscribes conspiracies to interfere with the administration of justice in federal court, and the second part of § 1985(2) proscribes conspiracies to interfere with the administration of justice in the state courts.

The second part of § 1985(2) as well as § 1985(3) deal with conspiracies aimed at depriving persons of the equal protection

of the laws. The first part of § 1985(2) does not contain this equal protection language. In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court relied on the equal protection language in § 1985(3) in holding that:

> "The language requiring intent to deprive of *equal* protection or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, individually discriminatory claims behind the conspirators' action." *Id.* (Emphasis in original)

In this Circuit, *Griffin*'s race or class-based animus requirement also applies to claims under the second part of § 1985(2). *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340 (5th Cir.1981). The first part of 1985(2), on the other hand, does not require race or class based animus. *Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983).[1] Thus, the statute confers federal question jurisdiction upon any private conspiracy interfering with the administration of justice in federal courts but imposes a race or class-based animus requirement on conspiracies interfering with the administration of justice in state courts.

Since Penry makes no serious claim of racial or class-based motivation behind his discharge, he does not state a claim under the second part of 1985(2). Although the first part of 1985(2) does not require race or class-based animus, it does require that there has been an interference with the federal court system, which Penry has not alleged. Penry's allegation of interference with OSHA does not fall within the confines of 1985(2).

## CONCLUSION

Penry fails to state a claim under 42 U.S.C. § 1985 and 18 U.S.C. § 1962. No other basis for federal question jurisdiction exists and there is no diversity of citizenship. Accordingly, Penry's pendant state law claims will also be dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

---

1. The Fifth Circuit has held that each and every section of 42 U.S.C. 1985 imposed a racial or class-based animus requirement. *Kimble v. D.J. McDuffy, Inc.*, 623 F.2d 1060, 1062 (5th Cir.1980 *en banc*). At oral argument before this court on April 30, 1987, Penry's attorney erroneously stated that *Kush* overruled *Kimble's* holding that racial or class-based animus is an essential element of a 1985 cause of action for conspiracies involving statea courts. A cursory reading of *Kush* reveals that it only limited Kimble to the extent *Kimble* imposed a class-based animus requirement for conspiracies to obstruct justice in federal courts.