RHESA HAWKINS BARKSDALE, Circuit Judge,
joined by EDITH H. JONES, JERRY E. SMITH, EMILIO M. GARZA, and EDITH BROWN CLEMENT,
concurring in part and dissenting in part:

The privilege of absurdity; to which no living creature is subject but man only. 
*375
Thomas Hobbes, Leviathan pt. I, ck. 5 (1651).

Primarily at issue is qualified immunity vel non against §§ 1983 (First Amendment) and 1985 claims. I respectfully dissent from its being denied, as well as official immunity’s being denied, as a result, against the state law claim. (I concur, of course, in immunity’s being granted against the Fourteenth Amendment due process claim.) Because I join Judge Jones’ splendid dissent concerning the First Amendment claim, I address only § 1985.
Though well intended (as always), the majority has lost sight of the proverbial forest for the proverbial trees (as did the majority for the divided panel). First, the majority’s reading of § 1985 has stretched that statute beyond all recognition; the new law it has confected leads to an absurd result. Second, it has turned its back on the fundamental, compelling reasons for qualified immunity; it ignores the discretionary element that lies at the heart of that doctrine.
With all due respect to my esteemed colleagues in the majority, it is simply nothing short of absurd to hold that the police chiefs and sheriffs are not vested with discretion in choosing which teachers to use (and pay) for training the police chiefs’ and sheriffs’ own student-officers— the very persons the police chiefs and sheriffs are responsible for training. This cannot be the law.
I.
Recitation of the material facts brings the ultimate issue into sharp focus. In 1998, while instructors at the East Texas Police Academy (ETPA), part of Kilgore College in Tyler, Kinney and Hall testified voluntarily in a federal court action as expert witnesses supporting an excessive force claim against the Kerrville, Texas, police department. The police chiefs and sheriffs (Officers) who sent (paid for) their student-officers to ETPA for training were concerned about a conflict of interest evidenced by Kinney’s and Hall’s testimony; discussed that conflict with ETPA; and decided in 1998 not to send (pay for) their student-officers to Kinney’s and Hall’s classes. As a result, ETPA discontinued those classes because they were no longer economically feasible.
Kinney and Hall had one-year contracts with ETPA. Thinking that his contract might not be renewed, Hall resigned from ETPA to find other employment. Kinney stayed until his contract expired and then accepted a new contract in a different position with the college.
In 1999, Kinney and Hall filed this action against Officers, their respective cities and counties, and the East Texas Police Chiefs Association, claiming violation of: § 1985(2); free speech under the First Amendment and due process under the Fourteenth; and Texas law. Among other rulings on motions for summary judgment, qualified immunity was denied Officers. A divided panel of our court reversed the qualified immunity denial for the due process claim; but it affirmed the denial for the remainder (against my dissent). Kinney v. Weaver, 301 F.3d 253 (5th Cir.2002), vacated and reh’g en banc granted, 338 F.3d 432 (5th Cir.2003).
II.
At issue is qualified immunity (interlocutory appeal), not the merits (appeal from final judgment). Restated, this appeal concerns only whether now, or when Officers acted in 1998, their alleged conduct was proscribed by law. The answer is “no”; qualified immunity must be granted.
Our standard of review for qualified immunity interlocutory appeals requires us *376 to accept the facts in the light most favorable to Plaintiffs. But, of course, that standard does not require us to accept Plaintiffs’ contentions on points of law. For an interlocutory appeal from the denial of qualified immunity, we have jurisdiction to accept the facts as assumed by the district court and determine whether, as a matter of law, they preclude qualified immunity. E.g., Aucoin v. Haney, 306 F.3d 268, 272 (5th Cir.2002) (quoting Nerren v. Livingston Police Dep’t, 86 F.3d 469, 472 (5th Cir.1996)). Applying that standard to this record, we must hold, as a matter of law, that Officers are entitled to qualified immunity.
Section 1985 makes it unlawful to, inter alia, “injure [a] party or witness in his ... property on account of having ... testified [freely and truthfully in a court of the United States]”. 42 U.S.C. § 1985(2). In denying qualified immunity for the § 1985 claim, the majority holds: (1) the statute applies to expert witnesses; and (2) Officers’ choosing to send (pay for) their student-officers to teachers other than Plaintiffs is a requisite injury to property under the statute. In so doing, the majority has lost sight of the well-known purpose for qualified immunity' — to protect government officials in their discretionary actions, the illegality of which is not apparent. Accordingly, government officials are liable individually for their conduct “only if they reasonably can anticipate when [it] may give rise to liability for damages”. Davis v. Scherer, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Again, the ultimate issue for this interlocutory appeal is whether Officers could reasonably anticipate in 1998 that their alleged conduct could give rise to § 1985 liability. In straying from the proper inquiry, the majority has undercut the very reason for qualified immunity — the discretion that lies at its heart.
Under the well-known, two-step inquiry for deciding such immunity, the first asks whether, under current law, a valid claim has been asserted — whether a right has been violated. E.g., Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). “[I]f no [such] right [has] been violated[,] ... there is no necessity for further inquiries concerning qualified immunity”. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); see, e.g., Hare v. City of Corinth, Miss., 135 F.3d 320, 325 (5th Cir.1998).
Only if a valid claim has been asserted is the second step taken: was defendants’ conduct objectively unreasonable under then existing clearly established law. Hare, 135 F.3d at 326. Of course, for this interlocutory appeal, as discussed supra, the issue of fact on whether Officers’ conduct in 1998 was objectively unreasonable under then existing law is not at issue for this second step; we can consider only an issue of law — whether the law underlying the claimed violation of § 1985 was clearly established at the time of that conduct in 1998. Plaintiffs fail the first step; they do not assert a claim under § 1985 — for several reasons, it does not apply to expert witnesses’ claims of the type made in this action concerning Officers’ conduct. That ends the inquiry. In the alternative, the law underlying the claimed violation of § 1985 was not clearly established when Officers acted in 1998. For purposes of demonstrating why qualified immunity is compelled, this two-step analysis will be applied twice: first, for examining why the statute does not apply to Plaintiffs qua expert witnesses (part A.); second, for examining why Officers’ conduct is not subject to the statute (part B.).
A.
In holding against qualified immunity, the majority improperly expands § 1985 *377 by holding that expert witnesses may bring the claim at issue here if they are injured on account of their testimony. We cannot read § 1985(2) so broadly; Plaintiffs qua expert witnesses cannot assert this claim. In the alternative, we cannot hold that this right for expert witnesses— now newly created by our court for this case (year 2004) — was clearly established when Officers acted in 1998.
1.
First, Plaintiffs do not assert a valid claim under § 1985 — it does not apply to the post-testimony economic claim made concerning their expert testimony. It is true that expert witnesses have been used for hundreds of years; on the other hand, the professional expert witness who profits considerably from such testimony is a recent development. E.g., Timothy Perrin, Expert Witness Testimony: Back to the Future, 29 U. Rich. L. Rev. 1389, 1411 (1995) (discussing growing industry of individuals who spend substantial portions of their time testifying or consulting with litigants and even advertise their services). Congress could never have envisioned protecting against loss of income for this type of testimony when it enacted § 1985 in 1871. Even assuming, arguendo, the majority is correct in holding that § 1985js plain meaning encompasses the claim by these expert witnesses, Maj. Opn. at 351-52, this is not necessarily determinative. Even where a statute’s meaning is plain, “we may depart from its meaning ... to avoid a result so bizarre that Congress could not have intended it”. Moosa v. INS, 171 F.3d 994, 1008 (5th Cir.1999)(in-ternal quotation marks omitted). This is just such an instance.
By enacting § 1985, Congress intended, inter alia, to protect those who testified in federal court and were integral to the proper functioning of those courts, not to provide a post-testimony, economic loss claim of the type at issue here for expert witnesses. Even allowing for the salutary “broad sweep” of Reconstruction-era civil rights statutes, Maj. Opn. at 351-52, the majority has stretched § 1985 much too far. The reading it accords § 1985 leads to an absurd result, as evidenced by the following examples.
Expert witnesses are quite necessary to litigate certain claims (including, in some instances, those for excessive force); but such experts are readily available — to say the least. For example, for an excessive force claim, there may be only a few fact witnesses who can testify about the force used, but there are countless experts who can opine on whether it was excessive. Such fact witnesses are of the utmost importance; they may be able to offer the only independent evidence about what force was employed. Moreover, a fact witness is usually under subpoena and, therefore, has no choice about whether to testify. Accordingly, there are compelling reasons to give fact witnesses a high level of protection against an injury to them or their property on account of their federal court testimony.
Obviously, the same policy considerations are not in play in protecting expert witnesses. Given their abundance and other factors bearing on their status, they are not obligated to testify in a particular case. An expert should not be given the additional protection of a private right of action if adverse economic consequences flow from his testimony.
It is true, for example, that we do not distinguish between fact and expert witnesses for claims that witnesses were intimidated in a criminal trial. As another example, we do not distinguish between fact and expert witnesses in cases involving the absolute immunity that protects them from civil liability arising from their *378 testimony. Those matters involve the integrity of the underlying action; accordingly, we cannot permit expert witnesses to be intimidated into changing their testimony any more than we can permit that for fact witnesses; all must testify freely and truthfully.
On the other hand, a § 1985 claim of the type at issue concerns providing a remedy for an expert witness who suffers post-trial economic injury. In other words, the claim protects an expert witness’ interests after he has freely and truthfully given his testimony. In many respects, however, testifying as an expert is a business; such witnesses are able to weigh the economic benefits and risks of their testimony before agreeing to testify. Therefore, expert witnesses who choose to testify in a case (and are usually paid to do so, often quite handsomely) should not be able to avail themselves of § 1985 later, if adverse economic consequences flow from their testimony.
Consider the wide-ranging, truly absurd results arising out of extending § 1985 to cover post-testimony economic injury to expert witnesses of the type claimed here. Arguably, every person who testifies as an expert and is later denied employment could file an action under § 1985 against the would-be employer. For example, assume an urban planner routinely testifies in litigation against cities. Is a city now subject to § 1985(2) liability if it refuses to hire that person if he applies for a job in its planning department? The majority’s permitting expert witnesses to bring claims under this statute for such injury opens the door (perhaps the proverbial floodgates) for this type claim.
2.
As noted, even if an expert witness is protected under the statute for the claim at hand, a claim could be asserted only if it arose from conduct occurring after the date we render our decision for this appeal; in other words, the majority has confected a new claim. Accordingly, for the second step of the qualified immunity analysis, it was not clearly established at the time of Officers’ conduct in 1998 that expert witnesses are protected under § 1985 through a claim of the type at issue here.
In fact, as the majority admits, Maj. Opn. at 352, it appears that only one opinion (Second Circuit) had ever applied the statute to experts; this was done without analysis and concerned a claim for preventing testimony — a far cry from this case. Chahal v. Paine Webber, 725 F.2d 20 (2d Cir.1984). Chahal’s failure to specifically address expert witnesses does not imply that § 1985 obviously applies to them. On the contrary, the fact that there is only one opinion involving expert witnesses in the long history of this statute compels concluding that expert witnesses simply do not present claims under it, precisely because it does not apply to them.
Moreover, one Second Circuit opinion about preventing testimony could not have clearly established in Tyler, Texas, in 1998 that Officers’ actions with respect to these expert witnesses could violate § 1985. It is true that, even without judicial interpretation, violation of a statute can be clearly established for qualified immunity purposes. This is not such an instance; the very questions at issue about application of § 1985(2) to economic injury for expert witnesses compel holding, for qualified immunity purposes, that, when Officers in Tyler, Texas, acted in 1998, it was not clearly established that their conduct could violate § 1985(2).
B.
Assuming, arguendo, that § 1985 covers expert witnesses for the claim presented in *379 this action, Officers are still entitled 'to qualified immunity because the requisite “injury to property” by Officers for § 1985 liability is lacking. Therefore, Plaintiffs still fail to assert a claim; in the alternative, when Officers acted in 1998, this law was not clearly established.
1.
Officers’ actions underlying the § 1985 claim are not the kind proscribed by the statute. For the majority to hold otherwise is to stretch § 1985(2) beyond all recognition.
a.
Regardless of Officers’ reasons for doing so, electing in 1998 not to enroll (pay for) their student-officers in a class cannot be the requisite injury to property violative of § 1985. Haddle v. Garrison, 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998), is not to the contrary. The fact that, under Haddle, a plaintiff has a § 1985 claim for interference with at-will employment does not compel holding that Officers’ choice in 1998 not to enroll student-officers in Plaintiffs’ classes is an injury under the statute. Plaintiffs’ status as at-will employees is irrelevant, because sending student-officers to teachers at ETPA other than Plaintiffs is not a cognizable injury under § 1985.
In Haddle, the Supreme Court analogized to tort law claims concerning interference with economic relationships and held that third-party interference with at-will employment can constitute an injury under § 1985. Id. at 126, 119 S.Ct. 489. The Court defined tortious interference with economic relations as “maliciously and without justifiable cause inducting] an employer to discharge an employee, by means of false statements, threats or putting in fear”. Id. (quoting 2 T. Cooley, Law of Torts 589-591 (3d ed. 1906))(em-phasis added). The majority states that, “according to the district court, [Officers] ... tried to have the plaintiffs fired from their jobs”, Maj. Opn. at 353 (emphasis added); but, in the next breath and quite contrary to our limited standard of review, the majority greatly overstates Officers’ “trying” conduct by equating it with “coercing an employer into firing an employee”, id. Trying to coerce an employer into firing an employee is not tortious interference with employment. Rather, as the majority concedes, id., the “classic case” for such interference (as evidenced by all cases cited both by the majority and this dissent, including Haddle) concerns a plaintiffs being actually discharged. Kinney was not discharged; Hall resigned of his own volition;' and neither claims he was constructively discharged. Therefore, Officers’ conduct does not constitute an injury to property under tort law or § 1985(2).
For qualified immunity purposes here, and if we analogize to tort law, refusing to enroll (pay for) student-officers in a class does not equate with “maliciously inducing” an employer to discharge an employee. A typical case of such tortious interference with economic relations would involve a defendant’s demanding that a plaintiff be fired, or telling lies about him in order to have him fired, followed by the employee’s being fired. E.g., Ahrens v. Perot Systems Corp., 205 F.3d 831, 836 (5th Cir.) (discussing in judicial estoppel context plaintiffs earlier claim that she had been fired because defendants tor-tiously interfered with her employment by revealing, confidential and disparaging information about her), cert. denied, 531 U.S. 819, 121 S.Ct. 59, 148 L.Ed.2d 26 (2000); Sterner v. Marathon Oil Co., 767 S.W.2d 686 (Tex.1989) (upholding finding tortious interference because defendant directed plaintiffs employer to fire him).
*380 It is simply not the law that the refusal to enroll (pay for) student-officers (regardless of Officers’ motive) is the kind of interference actionable under tort law, especially for § 1985.
b.
While the analogy to tort law is instructive, the purpose and history of § 1985 also compel holding that Plaintiffs do not assert a claim. The Supreme Court noted in Kush v. Rutledge, 460 U.S. 719, 727, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983), that “[p]rotection of the processes of the federal courts was an essential component of Congress’ solution [via § 1985 enacted in 1871] to disorder and anarchy in the Southern States”. When it enacted § 1985 in an effort to protect such processes, Congress cannot possibly have intended a scenario akin to compelling Officers’ to enroll (pay for) their student-officers in Plaintiffs’ classes. Allowing Officers to decide who teaches their student-officers, even if motivated by Plaintiffs’ expert testimony, is hardly the type of “disorder and anarchy” that Congress was addressing in 1871. Although the statutory language of § 1985 is broad, it cannot be read so broadly as to encompass Officers’ actions — especially where, as here, the issue is qualified immunity, not the merits. To so read § 1985 is, again, to give it an absurd result and to create new law. The majority’s comments concerning Kush’s rejection of a racial animus requirement for certain § 1985 claims, Maj. Opn. at 352 n. 14, are irrelevant to our conclusion that Plaintiffs injury is not cognizable under the statute. Instead, Kush elucidates that allowing a claim based on Officers’ choice not to enroll their students in classes produces an absurd result in the light of the Congressional goal for § 1985(2) — protecting the processes of the federal courts.
The majority tries to limit its holding by stating that “the statute does not create liability for every adverse action taken against a witness after the witness testifies in a federal case”, because of the limiting principle in § 1985 that the injury must be “on account of his having so attended or testified”. Maj. Opn. at 355. The majority pays lip service to the other important limiting principle contained in § 1985— that the adverse action taken against the witness be an “injury to property”. Even assuming that Officers acted “on account of’ Plaintiffs’ testimony, Officers’ choice to enroll (pay for) their student-officers in other instructors’ classes is not the requisite injury to property.
The majority would allow any reaction to a witness’ testimony to be actionable if it were in response to that testimony. This is too broad. The statute limits actionable responses to those that injure the witness’ property. Although interference with at-will employment is such an injury, choosing not to enroll (pay for) student-officers in a particular class, is not. Plaintiffs do not assert a claim. Accordingly, our inquiry should stop at step one.
2.
In the alternative, taking the second step for qualified immunity analysis only makes it more evident that Officers are entitled to qualified immunity. Surely, this step compels awarding it. Again, this step involves deciding whether Officers’ conduct in 1998 was objectively unreasonable in the light of then dearly established law. Hare, 135 F.3d at 325. As discussed, and for this interlocutory appeal, we are concerned only with an issue of law— whether the law was dearly established when Officers acted in 1998; we are not concerned with an issue of fact — whether Officers’ conduct in 1998 was objectively *381 unreasonable -in the light of then existing clearly established law.
Officers stopped sending (paying for) their student-officers to Plaintiffs’ classes in October 1998. Despite the majority’s take on this, Maj. Opn. at 353-56, Had-dle’s being decided two months later in December did not clearly establish that Officers were then (or later) violating § 1985(2). Moreover, Haddle was decided after Kinney’s and Hall’s classes were removed in November from the schedule. The majority contends that Officers acted in furtherance of the conspiracy after December because they “continued to prohibit their officers from enrolling in Kinney’s or Hall’s classes”, Maj. Opn. at 354; but Officers could not have prohibited enrollment in classes that were not on the schedule. The majority’s continuing conspiracy theory attempts to obscure the obvious — it was not clearly established when Officers acted in 1998 that their actions violated the statute. In addition, Haddle gave no indication, nor has any other case, that an act as benign as Officers’ sending (paying for) their student-officers to different teachers at a police academy is an injury to property under § 1985(2).
III.
The ultimate issues for this interlocutory appeal are whether Plaintiffs assert a valid claim; and, only if so, whether that law was clearly established when Officers acted in 1998. Plaintiffs do not assert a § 1985 claim; moreover, given the majority’s extreme extensions of existing § 1985 law needed in order to hold against qualified immunity, it is obvious that the law now confected by the majority was not clearly established when Officers acted in 1998.
Therefore, qualified immunity must be awarded against the § 1985 claim. For the reasons stated by Judge Jones, it must also be awarded against the First Amendment claim. Finally, as a result and for the reasons stated in my dissent from the panel opinion, 301 F.3d at 296, official immunity must be awarded against the state law claim.
Accordingly, I respectfully dissent from not granting immunity against those claims.