**Charles Johnny GORMAN, Jr., Plaintiff,**

v.

**G.M. ROBERTS, et al., Defendants.**

Civ. No. 94–D–673–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 17, 1995.

Robert J. Varley, Montgomery, AL, for plaintiff.

Janie B. Johnston Clarke, Robert M. Alton, III, Department of Transportation, Legal Division, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is the defendants G.M. Roberts, D.W. Vaughn, V.E. Richey, J.L. Blankenship, R.J. Green, Jack Norton, Perry Hand, and Joe Thrasher's motion to dismiss, motion to rescind the order granting plaintiff's motion to proceed in forma pauperis and motion to quash service of process filed June 28, 1994, which the court construes as a motion for summary judgment.[1] The plaintiff responded in opposition on July 11, 1994. Also before the court is defendant Mark Peevy's motion for summary judgment filed February 17, 1995. The plaintiff failed to respond to defendant Mark Peevy's motion. Because the motions involve similar issues and arise from the same set of facts in relation to the court's discussion of supplemental jurisdiction, the court will address them simultaneously in that discussion. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendants G.M. Roberts, D.W. Vaughn, V.E. Richey, J.L. Blankenship, R.J. Green, Jack Norton, Perry Hand, and Joe Thrasher's (hereafter "defendants") motion is due to be granted. The court further finds that defendant Mark Peevy's motion is due to be denied as moot.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

---

1. When the movant submits a 12(b)(6) motion for failure to state a claim upon which relief can be granted and "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Fed.R.Civ.P. 12(b). In ruling on the defendants' motion, the court has considered the volumes of evidence submitted by the parties and, thus, will address the issues raised under the summary judgment standard. *See* Order filed February 23, 1995 (ordering the motion to dismiss to be construed as a motion for summary judgment).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

## FINDINGS OF FACT

 This case is essentially composed of a retaliatory harassment action brought under 42 U.S.C. §§ 1981, 1983 and 1985. The plaintiff, who filed this case *pro se*, also attempts to enforce his First Amendment rights, and his Fourteenth Amendment due process rights through § 1983.[2] Further, the plaintiff attempts to invoke the court's jurisdiction under the Sherman Anti–Trust Act and the Rehabilitation Act of 1973.[3]

The plaintiff, Charles Johnny Gorman, Jr. (hereafter "Mr. Gorman"), is currently employed with the Alabama Department of Transportation and is on leave without pay due to medical problems. However, on June 10, 1992, Mr. Gorman received an employment termination letter from the Director of the Department, and another letter on July 14, 1992, which the Department considered to be an amended termination letter. The reasons given in the letters for termination of Mr. Gorman's employment were as follows:

> [F]alsifying your Application for Examination with the State of Alabama [contained in the June 10, 1992 letter].
>
> ... for the good of the service and for failing to list certain criminal convictions in the state court of Alabama.... *Furthermore the felony nature of the crimes of*

*which you were convicted disqualifies you from performing your job duties as Equal Employment Officer* [contained in the July 14, 1992 letter]. (Emphasis supplied.)

See *State of Alabama Highway Dep't v. State Personnel Bd.*, CV–92–2581 (Ala.Ct.App. 1993) (attached to Def.'s Mot. to Dis.).

A hearing was held before a hearing officer on August 12, 1992, at which Mr. Gorman was present. Mr. Gorman alleged that his right to due process was violated, and as a result, he should be reinstated. The hearing officer rejected this contention and recommended Mr. Gorman's termination. The State Personnel Board rejected the recommendation of the hearing officer and reinstated Mr. Gorman finding a violation of his right to due process. Thereafter, the Board's decision was affirmed by the Circuit Court of Montgomery County and reaffirmed by the Alabama Court of Civil Appeals. Mr. Gorman filed this complaint alleging numerous violations on June 1, 1994, and subsequently filed an almost identical complaint on June 2, 1994, in the Circuit Court of Montgomery County.

## DISCUSSION

### A. Claims Under 42 U.S.C. §§ 1981, 1983, and 1985

 The court will first address Mr. Gorman's attempt to invoke the court's jurisdiction pursuant to 42 U.S.C. § 1981. The defendants contend that Mr. Gorman's claims under § 1981 require that he allege "injury because of discrimination due to his ... race" and his failure to do so renders these claims meritless. Defs' Mot. to Dis. at 2. In support thereof, the defendants rely on *Masel v. Industrial Commission of Illinois*, 541 F.Supp. 342 (D.C.Ill.1982).

 Section 1981 prohibits race discrimination in making and enforcing contracts and is a statutory remedy available in both private and public sectors.[4] *Johnson v. Rail-*

---

**2.** The court notes that § 1983 does not create federal rights, but is the vehicle for enforcing federal rights established by other sources of federal law. *Albright v. Oliver*, —— U.S. ——, ——, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994).

**3.** At the outset, the court notes that Mr. Gorman's attempt to invoke the court's jurisdiction concerning the Sherman Anti–Trust Act and the

Rehabilitation Act of 1973 have no merit and do not warrant further discussion.

**4.** 42 U.S.C. § 1981 provides in relevant part: "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens."

*way Express Agency, Inc.*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975). Prior to the 1991 amendments to the Civil Rights Act of 1964, the Supreme Court of the United States narrowly construed the right "to make and enforce contracts" clause of § 1981(a). In *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Court held that § 1981 "covers conduct only at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through the legal process." Thus, conduct affecting "the terms and conditions of continuing employment" was not actionable. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1160 (11th Cir.1993) (quoting *Patterson*, 491 U.S. at 179, 109 S.Ct. at 2374).

In 1991, the Civil Rights Act (hereafter the "Act") was amended, expanding the coverage of 42 U.S.C. § 1981 to include claims of racial discrimination based upon wrongful termination. Pub.L. No. 102–166, S. 1745, 102d Cong., 1st Sess. (1991) (Congress passed the Act on November 7, 1991, which was signed into law on November 21, 1991, by former President George Bush.). The Act effectively reverses *Patterson* and its progeny and now permits claims for intentional racial discrimination in "... the making, performance, modification, and termination of [employment] contracts," as well as "... the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Hence, the Act maximizes the overlap between Title VII and § 1981 and allows an aggrieved party alleging intentional discrimination to alternatively seek recourse under both statutes.

■ Mr. Gorman's claim under § 1981 requires proof of intentional discrimination. *General Bldg. Contractors Ass'n., Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct.

3141, 3150, 73 L.Ed.2d 835 (1982); *Washington v. Davis*, 426 U.S. 229, 246–48, 96 S.Ct. 2040, 2051, 48 L.Ed.2d 597 (1976); *Baldwin v. Birmingham Bd. of Educ.*, 648 F.2d 950, 954 (5th Cir.1981).[5] Further, section 1981 only applies to racial discrimination, not to discrimination based upon religion, national origin, or sex. *See Masel*, 541 F.Supp. at 344. Thus, counts seeking damages under § 1981 must contain some allegations of racial discrimination. *Id.* In this case, the court finds that Mr. Gorman has not even hinted that he has suffered racial discrimination, but rather, his complaint is couched in terms of a retaliatory harassment claim.[6] Accordingly, the court concludes that Mr. Gorman has failed to proffer that he has suffered discrimination based on his race, white, and therefore, he has failed to set forth a § 1981 claim.

The defendants also contend that Mr. Gorman's claims under § 1983 require that he allege "injury because of discrimination due to his ... race." Def.'s Mot. to Dismiss at 2. In support thereof, the defendants again rely on *Masel v. Industrial Commission of Illinois*, 541 F.Supp. 342 (D.C.Ill.1982). However, the court finds that the defendants have clearly misread *Masel*. Furthermore, the court stresses that it is common knowledge throughout the legal community that § 1983 applies to constitutional violations other than racial discrimination,[7] and thus, this contention by the defendants does not warrant further discussion.

■ The defendants further contend that Mr. Gorman's claims under § 1985 require that he allege "injury because of discrimination due to his ... race" and his failure to do so necessitates a finding of summary judgment. Again, the defendants rely on *Masel v. Industrial Commission of Illinois, supra.* However, the court stresses that the defen-

---

**5.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**6.** The court stresses that it liberally construes civil rights complaints filed by *pro se* plaintiffs. *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct.

594, 30 L.Ed.2d 652 (1972). However, the court is not required to engage in an unreasonable construction or gross assumption. *Mahurin v. Moss*, 313 F.Supp. 1263 (E.D.Mo.1970).

**7.** Section 1983 has been utilized to litigate a broad spectrum of constitutional claims, including First Amendment freedoms, Fourth Amendment protections, and the rights of privacy, travel, and the right to vote, as well as due process and equal protection rights.

dants again have misread *Masel*, which does not limit § 1985 to racial discrimination.

Although § 1985 has several intricate subdivisions,[8] the court will only consider subsection (3), which is relevant to this case. The Eleventh Circuit has summarized the basic elements of § 1985(3) as follows:

> "(1) conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of *the equal protection of the laws, or of equal privileges and immunities under the laws;* and (3) act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). More specifically, the second element requires a showing of "some racial, or perhaps otherwise class-based, individiously discriminatory animus behind the conspirators' action." *Id.* at 829, 103 S.Ct. at 3356 [ (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)) ].

*Lucero v. Operation Rescue of Birmingham,* 954 F.2d 624, 627 (11th Cir.1992) (emphasis added); *see also Saville v. Houston County Healthcare Authority,* 852 F.Supp. 1512, 1537 (M.D.Ala.1994).

As the above quote underscores, the Supreme Court of the United States, in analyzing the predominate purpose of the civil rights conspiracy statute, has viewed § 1985(3) in a narrow sense. *United Broth. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Specifically, the Court has commented on those protected by the statute as follows:

> In the first place, it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans. The central theme of the bill's proponents was that the Klan and others were forcibly resisting efforts to emancipate Negroes and give them equal access to political power. The predominate purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters. The latter included Republicans, generally, as well as others, such as Northerners who came South with sympathetic views towards the Negro.

*Scott,* 463 U.S. at 836, 103 S.Ct. at 3360. In *Scott,* the Court went on to state that lacking other evidence of congressional intention, it would withhold judgment on the question "whether § 1985(3), as enacted, went any farther than its central concern—combating the violent and other efforts of the Klan and its allies to resist and to frustrate the intended effects of the Thirteenth, Fourteenth, and Fifteenth Amendments." *Id.* at 837, 103 S.Ct. 3352. Essentially, the Court hints that the section's main focus is on racial discrimination.

The Eleventh Circuit has stated that § 1985(3) applies to racial animus and has reserved judgment on whether the statute applies to gender-based animus. *Lucero,* 954 F.2d at 629 n. 6. In this case, Mr. Gorman asserts neither.[9] In fact, Mr. Gorman has failed to identify "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" behind the defendants' actions, as required under *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). *See Lucero,* 954 F.2d at 627 (plaintiffs similarly failed to establish a claim under § 1985(3)). Thus, even though the complaint is liberally construed, the court finds that the Mr. Gorman has not meet his burden of persuasion on the class issue, and therefore, he has not stated a claim under § 1985(3).[10]

---

**8.** *See Kush v. Rutledge,* 460 U.S. 719, 724–25, 103 S.Ct. 1483, 1486–87, 75 L.Ed.2d 413 (1983) (parsing subdivisions of § 1985).

**9.** The complaint in relation to the § 1985(3) claim states "[d]efendants did in part conspire to force the plaintiff to leave his job and to deny plaintiff benefits other employees had and/or have." The complaint also states "defendants did conspire to intentional [sic] inflict emotional distress on the plaintiff by the actions and the continued actions and harassment plaintiff was subjected to."

**10.** The court need not, and does not, decide whether Mr. Gorman has established any of the elements in a § 1985(3) claim other than the second element. *See Lucero,* 954 F.2d at 628 n. 4.

## B. *Res Judicata*

The defendants' next contend that the Mr. Gorman's allegation concerning his First Amendment right to free speech is precluded because of the doctrine of res judicata. In support thereof, the defendants submit evidence allegedly showing that Mr. Gorman has prevailed on this issue before the State Personnel Board, the Circuit Court of Montgomery County, and the Alabama Court of Civil Appeals.

At the outset, the court points out that the Supreme Court of the United States has accorded preclusive effect to state court review of agency proceedings and, in fact, to administrative proceedings themselves. In *Kremer v. Chemical Construction Corporation*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Supreme Court of the United States said that state court judicial review of a state administrative agency's action is entitled to full faith and credit pursuant to 28 U.S.C. § 1738.[11] *Id.* at 479, 102 S.Ct. at 1896. *Kremer* involved a claim under Title VII of the Civil Rights Act of 1964 and its holding is also applicable to § 1983 litigation as well. The plaintiff filed a charge of employment discrimination with the Equal Opportunity Commission. *Id.* at 463, 102 S.Ct. at 1888. As required under the statute, the commission referred the matter to the appropriate state agency. *Id.* at 464, 102 S.Ct. at 1888. The New York State Division of Human Rights investigated and issued a report that the charge was unfounded. *Id.* There-after, the plaintiff sought judicial review of the agency's decision in the state courts. *Id.* Simultaneously, the plaintiff, after receiving a right-to-sue letter from the EEOC, filed a Title VII suit in federal court. *Id.* at 465, 102 S.Ct. at 1889. The state court affirmed the state agency's determination. *Id.* at 464, 102 S.Ct. at 1888. The issue then was whether the federal court was obligated to dismiss the Title VII case based on res judicata.

The Supreme Court concluded that the federal litigation was precluded by the state proceedings. *Id.* at 485, 102 S.Ct. at 1899. The Court found that "[n]othing in the legislative history of the 1964 [Civil Rights] Act suggest[s] that Congress considered it necessary or desirable to provide an absolute right to relitigate in federal court an issue resolved by a state court." *Id.* at 473, 102 S.Ct. at 1893. The Court said that it was irrelevant that the state court proceeding was in the form of judicial review of an administrative agency because there is no requirement that judicial review must proceed de novo if it is to be preclusive.[12] *Id.* at 473–74, 102 S.Ct. at 1893–94. In the below analysis, the court will adhere to the foregoing principles set forth by the Supreme Court of the United States.

The court stresses that it will apply Alabama law with respect to the doctrine of

**11.** Section 1738 requires federal courts to give the same preclusive effect to state court judgments as those judgments would be given in the courts of the State from which the judgments emerged. *See* 28 U.S.C. § 1738.

**12.** The court also notes that the Supreme Court has extended preclusion even further in *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). An employee of the University of Tennessee claimed that he was fired because of his race and filed an administrative appeal within the state system, and a federal court suit under § 1983 and Title VII. *Id.* at 790–91, 106 S.Ct. at 3221–22. The state administrative proceedings finished first, with the agency concluding that the discharge was not racially motivated. *Id.* at 791, 106 S.Ct. at 3222. The issue was whether the unreviewed agency decision had preclusive effect in federal court. *Id.* at 792, 106 S.Ct. at 3222.

In *Kremer,* as discussed *supra,* the Court held that a judicial decision affirming an agency ruling was preclusive of federal court litigation. In *Elliott,* the question concerned preclusion from a state agency decision where there had not been judicial review. The Court in *Elliott* held that the "federal common-law of preclusion" requires that federal courts in § 1983 actions afford the same preclusive effect to unreviewed state administrative agency factfindings to which it would be entitled in the state's courts if the state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Id.* at 799, 106 S.Ct. at 3226. (internal citations and quotations omitted).

However, in *Astoria Federal Savings & Loan Association v. Solimino,* 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991), the Supreme Court held that judicially unreviewed state administrative findings have no preclusive effect on age discrimination proceedings in federal court. *Id.* at 110–114, 111 S.Ct. at 2171–73. Although this

res judicata.[13] *NAACP v. Hunt,* 891 F.2d 1555, 1560 (11th Cir.1990) (citing *McDonald v. Hillsborough County School Bd.,* 821 F.2d 1563, 1565 (11th Cir.1987)). Under Alabama law, the essential elements of res judicata are: "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits." *Id.* (quoting *Hughes v. Allenstein,* 514 So.2d 858 (Ala. 1987)). All of these elements must be met, and therefore, if even one is not met, res judicata is not applicable. *Id.* In other words, for the First Amendment claim to be barred, it either could or should have been raised by Mr. Gorman in his state hearings.

Here, the court finds that clearly the first three requirements have been satisfied,[14] and thus, the court's determination will hinge on its analysis of the fourth element. The court stresses that the state circuit court's review was limited to "whether the record reveals substantial evidence to support the agency's decision." This standard of review indicates that Mr. Gorman could not have raised his constitutional claim under the First Amendment before the circuit court, because the Personnel Board had ruled in his favor. *See Gjellum v. City of Birmingham,* 829 F.2d 1056, 1060–61 n. 12 (11th Cir.1987) (Under identical circumstances, the court ruled similarly.). Furthermore, the defendants do not assert any evidence that the First Amendment claim was brought before the Personnel Board. *See Elliott,* 478 U.S. at 799, 106 S.Ct. at 3226; *see also supra* note 11. Therefore, the court finds that Mr. Gorman's First Amendment claim is not barred by the doctrine of res judicata.

However, the court emphasizes that Mr. Gorman's Fourteenth Amendment due process claim was extensively brought before the hearing officer, Personnel Board and state courts.[15] Essentially, the Personnel Board rejected the hearing officer's recommendation based on a finding that Mr. Gorman's right to due process was violated. Thus, the record submitted to the Circuit Court of Montgomery County and thereafter to the Alabama Court of Civil Appeals contained extensive arguments concerning the due process claim. In fact, this claim supported the findings of all the state judicial bodies which analyzed this case.

With respect to the same cause of action element to res judicata under Alabama law, the Eleventh Circuit has stated the following:

> This Circuit has recognized that "the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action." Res judicata applies not only to the precise legal theory presented in the prior case, but to all legal theories and claims arising out of the same nucleus of operative fact.

*Hunt,* 891 F.2d at 1561. Here, the court finds that the due process claim was the precise legal theory argued before the Personnel Board and reviewed by the Circuit Court of Montgomery County and the Alabama Court of Civil Appeals. Clearly, Mr. Gorman had a "full and fair opportunity to litigate" his due process claim. *See Kremer,* 456 U.S. at 480–81, 102 S.Ct. at 1896–98. As a result, the court concludes that Mr. Gorman's Fourteenth Amendment due process claim is precluded by res judicata. The court will now proceed to discuss the defendants' other contentions.

case did not involve § 1983, it seems applicable to § 1983 claims.

13. The court also notes that the Eleventh Circuit has stated that if state proceedings between the same parties satisfy the requirements for invoking res judicata, the district court *must* apply the doctrine in a federal civil rights action. *Concordia v. Bendekovic,* 693 F.2d 1073 (11th Cir.1982).

14. The court finds these three elements have been satisfied as the Circuit Court of Montgomery County is a court of competent jurisdiction to hear appeals from Personnel Board decisions, *see* 1945 Ala.Acts No. 248 § 22 (as amended), and

the court's judgment was rendered on the merits. Further, the parties to both suits are substantially identical.

15. The court notes that this finding it evidenced by the documents submitted in support of the defendants' motion for summary judgment. Thus, the court adheres to the rule set forth by the Eleventh Circuit requiring additional evidence, preferably a copy of the state trial court's records, in order to apply the doctrine of res judicata in the context of a Rule 56 motion for summary judgment. *See Concordia v. Bendekovic,* 693 F.2d 1073, 1075 (11th Cir.1982).

## C. *Immunities*

The court will next look into the immunities available to the defendants. Before discussing the merits of the defendants' contentions concerning this area, the court emphasizes that the availability of immunities depends on whether Mr. Gorman seeks money damages directly from the individual officers whom are named as defendants, or whether the remedy actually is sought against the State of Alabama. If this case actually seeks money damages from the State of Alabama's treasury then the Eleventh Amendment is at issue. However, if the damages are to be paid by the officers themselves then the defendants reliance on qualified immunity is central to the court's determination.

The court notes that often a suit where the relief is to be paid by an officer is described as a suit against the officer in his or her "individual capacity." Likewise, a suit seeking monetary damages from the government entity's treasury is a suit against the officer in his or her "official capacity." In this case, the heading of the complaint states that all defendants are being sued in both their individual capacities and their official capacities. Hence, the court construes the complaint as seeking both remedies, and thus the court will address the Eleventh Amendment and qualified immunity.[16]

### 1. *Eleventh Amendment Immunity as to § 1983*

■ The defendants allege that the Eleventh Amendment to the United States Constitution prohibits Mr. Gorman's lawsuit against them in their official capacities.[17] The Eleventh Amendment provides that:

[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

Although not expressly set forth in the Eleventh Amendment, the Supreme Court of the United States "has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens."[18] *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir.1990) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).

■ In *Carr v. City of Florence*, the Eleventh Circuit emphasized that "[l]awsuits against a state official in his or her official capacity are suits against the state when 'the state is the real, substantial party in interest.'" 916 F.2d at 1524 (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)). Here, since Mr. Gorman is seeking monetary relief from state employees and officials in their official capacities, "the state is considered the real party in interest because an award of damages would be paid by the state." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974)). Thus, the court will follow the precedent set forth by the Supreme Court of the United States directing it to treat this claim against the defendants in their official capacity as a suit against the state.[19] *Hafer v. Melo*, 502 U.S. 21, 23, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (emphasizing that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent")). As such, the immunities available to the defendants are those which the

---

**16.** In the foregoing analysis, the court again took into consideration the fact that Mr. Gorman filed the complaint as a *pro se* plaintiff. *See supra* note 5.

**17.** The court notes that Rule 25 of the *Federal Rules of Civil Procedure* provides for automatic substitution of public officers in actions against them in their official capacities when the originally named public officers leave office. Thus, to the extent that the defendants are sued in their official capacities as public officers of the State of Alabama, they are automatically replaced by their successors in office.

**18.** The court notes that it is undisputed that Mr. Gorman is a citizen of the State of Alabama.

**19.** In making this determination, the court reiterates that it construes the suit against these public officers in their official capacities as requiring an award of damages to be paid with state funds. *See Carr*, 916 F.2d at 1526 (citing *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974)).

State of Alabama possesses, such as the Eleventh Amendment. *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362 (citing *Graham*, 473 U.S. at 167, 105 S.Ct. at 3106).

The Supreme Court of the United States has held that the Eleventh Amendment bars actions seeking a monetary award from a state, state agency or state official/employee sued in his or her official capacity. *Edelman*, 415 U.S. at 662–63, 94 S.Ct. at 1355–56. However, the Supreme Court has also carved out an exception stating that an individual may bring suit if the state unequivocally has waived its immunity or if congressional legislation under § 5 of the Fourteenth Amendment operates as a waiver of the Eleventh Amendment's protection. *Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573, 577, 66 S.Ct. 745, 747, 90 L.Ed. 862 (1946); *Hutto v. Finney*, 437 U.S. 678, 693, 98 S.Ct. 2565, 2575, 57 L.Ed.2d 522 (1978) (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)). Here, neither the State of Alabama nor Congress has waived Eleventh Amendment immunity under § 1983 and therefore, the aforementioned exceptions do not apply. *Carr*, 916 F.2d at 1524–25 (Exceptions to Eleventh Amendment immunity did not apply in § 1983 action, inasmuch as Congress had not abrogated Eleventh Amendment immunity in § 1983 cases and State of Alabama had not waived its immunity.). Based on the foregoing authority, the court finds that the § 1983 claims asserted against the defendants in their official capacities are barred by the Eleventh Amendment. Furthermore, notwithstanding the previous §§ 1981 and 1985 discussions, the court notes that the claims against the defendants in their official capacities under these sections are also barred by the Eleventh Amendment. *See Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir.1981) (holding that the Eleventh Amendment applies in § 1981 litigation); *Fincher v. Florida Dep't of Labor & Employment Sec. Unemployment Appeals Comm'n*, 798 F.2d 1371, 1372 (11th Cir.1986), *cert. denied*, 479 U.S. 1072, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987) (finding "no express congressional abrogation of the state's Eleventh

Amendment immunity with respect to 42 U.S.C. § 1985 actions").

#### 2. *Qualified Immunity as to § 1983*

 The defendants further assert that they are entitled to qualified immunity in this action, because Mr. Gorman is presently employed by the State of Alabama, he has lost no back pay, and he has suffered no tangible injury.[20] The defendants rely on *Wu v. Thomas*, 996 F.2d 271, 273 (11th Cir. 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1543, 128 L.Ed.2d 195 (1994), in which the court could not find any case that clearly established that retaliatory harassment—as opposed to sexual or racial harassment—could violate Title VII where the employer caused the employee no tangible harm, such as loss of salary, benefits, or position. *Id.* at 273. The basis of the qualified immunity defense is firmly established:

> When a plaintiff sues a municipal officer in the officer's individual capacity for alleged civil rights violations, the plaintiff seeks money damages directly from the individual officer. If sued "individually," a municipal officer may raise an affirmative defense of good faith, or "qualified," immunity.

*Swint v. City of Wadley*, 51 F.3d 988, 994 (11th Cir.1995) (quoting *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991)). The issue of whether defendants are entitled to qualified immunity may be properly determined on a pretrial motion for summary judgment under Rule 56 of the *Federal Rules of Civil Procedure.*

 For Mr. Gorman to defeat the defendants' motion for summary judgment based on qualified immunity, he must show that the defendants are not entitled to qualified immunity as a matter of law or that genuine issues of material fact exist so that the determination of whether the defendants are entitled to qualified immunity are only properly determined after findings of fact have been made by the jury. *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988). However, even disputes over genuine issues of ma-

---

**20.** The court notes that "officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance

on existing law." *Hafer*, 502 U.S. at 25, 112 S.Ct. at 362 (citing *Graham*, 473 U.S. at 166–67, 105 S.Ct. at 3105–06.

terial fact will not "preclude summary judgment premised on a defendant's qualified *immunity* if the legal norms allegedly violated were not clearly established at the time of the challenged actions." *Id.* at 1564.

Qualified immunity protects government officials performing discretionary functions from civil liability if their conduct violates no clearly established statutory or constitutional rights. *Courson v. McMillian*, 939 F.2d 1479, 1486 (11th Cir.1991). Moreover, "qualified immunity seeks to protect government officials from the cost of trial and the burdens of broad reaching discovery." *Caraballo–Sandoval v. Honsted*, 35 F.3d 521, 524 (11th Cir.1994) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982); *see also Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1184 (11th Cir.1994) (citing *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1149 (11th Cir.1994) (". . . qualified immunity protects government officials performing discretionary functions from litigation, including discovery and trial")).

The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Rich*, 841 F.2d at 1563 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); *see also Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir.1991). According to the Court in *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096; *see also Swint v. Chambers County Comm'n*, — U.S. —, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995); *Hurst v. Finley*, 63 F.3d 1112 (1995).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity is as follows:

1. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law" [or a federal statute].

*Rich*, 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983) (brackets added)).

Since the advent of the *Zeigler* analysis, it is unclear how a court is to determine whether a government official was acting within his or her discretionary authority when the allegedly illegal or unconstitutional conduct occurred. *Id.* at 1564. However, the court in *Rich* relied on a pre-*Harlow* case to hold that "[a] government official meets his burden of proof by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Id.* (quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir.1981)).

Once a defendant proves that he or she was acting within the scope of his or her discretionary authority, the burden of proof shifts to the plaintiff. The plaintiff's prong of the two part test can be divided into two subparts. First, a plaintiff must prove that the law at the time of the acts was clearly established. *Courson v. McMillian*, 939 F.2d 1479, 1487–88 (11th Cir.1991). Secondly, the plaintiff must show a genuine issue of material fact concerning the defendant's conduct in violation of clearly established law. *Courson*, 939 F.2d at 1488.

In order to determine whether a law was clearly established, the right must be so specific that " 'in the light of pre-existing law the unlawfulness must be apparent.' " *Hansen v. Soldenwagner*, 19 F.3d 573, 575 (11th Cir.1994) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Thus, the court in its analysis may not consider developments in the law, which occur after a

defendant's alleged unlawful conduct. Furthermore, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 (emphasis added). However, " '[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful....' " *Swint v. City of Wadley,* 51 F.3d 988, 995 (11th Cir.1995) (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 (1987)). "The court must be convinced of the existence of a clear, factually-defined, well-recognized right of which a reasonable [government official] should have known." *Dartland v. Metropolitan Dade County,* 866 F.2d 1321, 1323 (11th Cir.1989).

The *Hansen* case has emphasized that the qualified immunity analysis is fact-specific:

"When considering whether the law applicable to certain facts is clearly established, the facts of cases relied upon as precedent are important. The facts need not be the same as the facts of the immediate case. But they do need to be materially similar. [Citation omitted]. Public officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases."

*Hansen,* 19 F.3d at 575 (quoting *Adams v. St. Lucie County Sheriff's Dep't,* 962 F.2d 1563, 1575 (11th Cir.1992), *approved en banc,* 998 F.2d 923 (11th Cir.1993)). In other words, "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Rodgers v. Horsley,* 39 F.3d 308, 311 (11th Cir.1994) (quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993)). The plaintiff cannot rely on "general conclusory allegations" or "broad legal truisms." *City of Fort Lauderdale,* 7 F.3d at 1557 (quoting *Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989)); *see also Adams v. St. Lucie County Sheriff's Dep't,* 962 F.2d 1563, 1574–75 (11th Cir.1992) (Edmondson, J., dissenting), *approved en*

*banc,* 998 F.2d 923 (11th Cir.1993); *Muhammad v. Wainwright,* 839 F.2d 1422, 1424 (11th Cir.1987). Further, whether applicable law was clearly established at the time of the challenged action is determined by reference to decisions of the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, and the state's highest court. *See D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n. 6 (11th Cir.1995); *Courson v. McMillian,* 939 F.2d 1479, 1498, n. 32 (11th Cir.1991).

The evidence reveals that the defendants were performing discretionary functions. Therefore, the court finds that the defendants have met their burden of proving that each of them was acting within his official capacity during the conduct in question. The first step of the *Zeigler* paradigm having been completed, the burden of proof now shifts to Mr. Gorman.

As to the second prong of the *Zeigler* test, i.e., that the defendants' conduct violated a clearly established constitutional law, the court must look to "whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Hurst v. Finley,* 63 F.3d 1112 (11th Cir.1995) (quoting *Swint v. Chambers County Comm'n,* —— U.S. ——, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (citation and quotation marks omitted)). In this case, Mr. Gorman does not cite and the court cannot find any case that clearly established that retaliatory harassment could violate Title VII where the employer caused the employee no tangible harm, such as loss of salary, benefits, or position.[21] Therefore, when the defendants acted, a reasonable employer could not have known for certain whether their acts were unlawful, and thus, the court finds that the defendants are entitled to qualified immunity.

Also, a review of the facts before the court reveals that Mr. Gorman cannot support a claim that any of the defendants engaged in acts which a reasonable public official or employee in the defendants' shoes would

21. The Eleventh Circuit has encountered some retaliation cases where an employer harassed an employee but caused the employee no economic harm. *See Thomas,* 996 F.2d at 273 n. 3. However, the court disposed of each of these cases on other grounds, and therefore, the court has failed to establish the proposition that unkind acts without economic consequences can violate Title VII. *Id.*

have recognized as a violation of Mr. Gorman's First Amendment right to free speech. *See Burrell v. Board of Trustees of Ga. Military College,* 970 F.2d 785, 791 (11th Cir. 1992), *cert. denied,* 507 U.S. 1018, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993). The record does not contain any inferable facts that could support a finding that any of the defendants engaged in any activity, positive or negative, in response to any public criticism Mr. Gorman may have made concerning his job or his employers.[22] The court stresses that "[w]ithout a constitutional violation, there can be no violation of a clearly established constitutional right." *Id.* (citing *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir.1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993)) (citing *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)). Therefore, the defendants are immune to Mr. Gorman's claim seeking recourse under § 1983 for a violation of his First Amendment right to free speech.

### D. *Supplemental Jurisdiction*

■ Because the foregoing reasons are sufficient to support summary judgment, the court need not address the remainder of the defendants' contentions contained in their motions to rescind the order granting plaintiff's motion to proceed in forma pauperis and to quash service of process, which, as previously determined, the court construes along with the motion to dismiss as a motion for summary judgment. However, the court will address whether it will exercise supplemental jurisdiction over the remaining state claims of defamation and invasion of privacy.[23] This analysis is particularly relevant to defendant Mark Peevy's motion for summary judgment as the court construes Mr. Gorman's complaint against Mr. Peevy as only alleging state claims—that he illegally released information regarding Mr. Gorman. This determination is supported by the fact that Mr. Gorman has never been employed by the Department of Public Safety, for which department Mr. Peevy served as As-

sistant Director and Director. Thus, the court believes that Mr. Peevy has never been a party to any employment termination, investigation or other related actions against Mr. Gorman.

The Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5089, substantially altered the law concerning ancillary and pendent jurisdiction. The Act creates, as 28 U.S.C. § 1367, a new provision concerning "supplemental jurisdiction." This provision codifies and revises the law that had developed under the labels "pendent" and "ancillary" jurisdiction. Specifically, subsection (a) of § 1367 dictates that as long as a federal district court has original jurisdiction of a claim, the court

> shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

The court stresses that the Act makes supplemental jurisdiction mandatory unless there is a specific statutory exception. One such exception provided in subsection (c) of § 1367 states:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) **the district court has dismissed all claims over which it has original jurisdiction,** or
>
> (4) in exceptional circumstances, where there are other compelling reasons for declining jurisdiction.

In accordance with the foregoing authority, since no claims remain from which the court had original jurisdiction, the court shall dismiss the remaining state claims without prejudice.[24]

---

**22.** The court notes that it gave Mr. Gorman the benefit of all the inferences. *See supra* note 5.

**23.** Specifically, the complaint sets forth that "[d]efendants have defamed and slandered the plaintiff within the community and professionally, as well as in the workplace." The complaint

further alleges that "[d]efendants did invade the privacy of the plaintiff by releasing information that was illegal for them to do so."

**24.** The court also notes that in *Pennhurst State School & Hospital v. Halderman* the Supreme Court of the United States held that a federal

## CONCLUSION

For the foregoing reasons, the court finds that the defendants G.M. Roberts, D.W. Vaughn, V.E. Richey, J.L. Blankenship, R.J. Green, Jack Norton, Perry Hand, and Joe Thrasher's motion for summary judgment, relating to the federal claims is due to be granted. The court further finds that the remaining state claims in this case are due to be dismissed without prejudice. As such, the court also finds that defendant Mark Peevy's motion for summary judgment is due to be denied as moot. A judgment in accordance with this memorandum opinion will be entered separately.

court may not hear pendent state law claims against a state government officer when the federal law claims are barred by the Eleventh Amendment. 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).