# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 9, 2010

No. 09-40288

Lyle W. Cayce
Clerk

ALFRED MONTOYA,

Plaintiff - Appellant

v.

FEDEX GROUND PACKAGE SYSTEM INC.,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, SMITH, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Alfred Montoya appeals from the district court's dismissal of his 42 U.S.C. § 1985(2) suit against FedEx Ground Package System, Inc. ("FXG"), for failure to state a claim. The district court concluded that the statute of limitations had run on Montoya's claims. We pretermit the statute of limitations question and instead AFFIRM on the alternate grounds that Montoya has not plausibly alleged a conspiracy aimed at deterring him from or retaliating against him for attending or testifying in a federal proceeding.

## I.  Facts & Procedural Background

For the purposes of this appeal from a dismissal for failure to state a claim upon which relief can be granted, we "accept[] all well-pleaded facts as true and

No. 09-40288

view[] those facts in the light most favorable to the plaintiff." *Sullivan v. Leor Energy LLC*, 600 F.3d 542, 546 (5th Cir. 2010). We therefore recite here the facts as alleged in Montoya's first amended complaint.

From 1994 until 2006, Montoya was an independent contractor pick-up and delivery provider for FXG and its predecessor, RPS Inc. ("RPS").[1] Montoya provided his own vehicles and employees and served an area designated by FXG (Montoya's "primary service area"). Under his contract with FXG, Montoya was compensated on the basis of the number of pick-ups and deliveries he made in his primary service area.

In 2002, FXG employees Eddie Garza-Gongora, the FXG Laredo terminal manager, and Eddie Contreras, one of the assistant managers, notified Montoya that part or all of his primary service area was being reassigned. Montoya complained to FXG's contractor relations staff and won reinstatement of part of the primary service area that Garza-Gongora and Contreras had informed him was being removed. The remainder of Montoya's former primary service area was assigned to Enrique Lozano, another independent contractor pick-up and delivery provider.

On June 3, 2004, Montoya filed suit (the "2004 Litigation") against FXG in the 111th District Court, Webb County, Texas, alleging breach of contract arising out of the reassignment of part of his primary service area. FXG removed to the United States District Court for the Southern District of Texas. Montoya responded to discovery requests in connection with the 2004 Litigation, including providing deposition testimony pursuant to FXG's notice on February 23, 2005.

Rodger Cabello, another FXG assistant terminal manager, and Garza-Gongora learned of the 2004 Litigation. Montoya alleges that these two FXG

---

[1] The complaint does not specify when FXG succeeded to Montoya's contract with RPS.

2

employees "acquired a hostile animus towards Montoya due to" the 2004 Litigation and "enlisted the aid and assistance" of three independent contractors—Lozano, Humberto Escobedo, and Gerardo Rodriguez—"in order to intimidate, harm, harass, and coerce Montoya into desisting from the pursuit [of] his claim in" federal court.

In early July 2004, Cabello and Garza-Gongora instructed Montoya to dismiss one of his employees. Montoya did so and asked Lozano and Escobedo to cover his primary service area until he could find and hire a new driver. Lozano initially agreed to help Montoya cover his primary service area but subsequently declined. Lozano told Montoya that "Cabello and/or Garza-Gongora forbade or coerced him into refusing [to] assist[] Montoya until Montoya could find a replacement driver." Cabello and Garza-Gongora "withheld their approval of replacement employees" to drive Montoya's routes, including temporary employees authorized by FXG to drive for other contractors. Cabello also discouraged drivers employed by other contractors from assisting Montoya.

In late July 2004, Cabello encouraged Montoya to sell his business or routes to Lozano and Escobedo; he further informed Montoya that he would receive no new routes while the 2004 Litigation was pending and that, if Montoya dropped the 2004 Litigation, he would consider adding a new route to Montoya's service area.

Cabello and Garza-Gongora reduced Montoya's routes on multiple other occasions during the pendency of the 2004 Litigation and in some cases assigned the removed routes to Lozano and Escobedo with their agreement. Montoya alleges that Cabello and Garza-Gongora undertook these reductions "[d]ue to the pendency of" the 2004 Litigation and "because [Montoya] refused to drop" the 2004 Litigation.

In March or April 2005, Cabello informed Montoya that FXG would not renew his contract because of the pendency of the 2004 Litigation. Throughout

3

2005, Cabello and Garza-Gongora took a variety of actions—assigning additional work without approving enough drivers, concealing scanners and scanning records—to make Montoya's performance record look poor.  In June 2005, Cabello and Garza-Gongora removed half of Montoya's remaining primary service area and assigned it to Escobedo and Lozano.

Finally, on May 21, 2006, Garza-Gongora, acting on behalf of FXG, terminated Montoya's contract.[2]  Montoya alleged that "[t]he motivation for Garza-Gongora's action in terminating Montoya's contract with [FXG] was based in whole or in part upon Montoya's maintenance of" the 2004 Litigation.

On April 1, 2008, Montoya filed this suit in the United States District Court for the Southern District of Texas.  As amended shortly afterward, the complaint alleged that the actions of FXG, Lozano, Escobedo, and Rodriguez constituted a conspiracy to intimidate a party to a federal lawsuit in violation of 42 U.S.C. § 1985(2).  The suit sought damages for Montoya's economic injury and attorneys' fees.  Two months later, Montoya filed a notice of voluntary dismissal without prejudice as to Rodriguez, Lozano, and Escobedo pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  Although the court did not act on the proposed order that Montoya filed with his notice, the dismissal as to those parties was effective when the notice was filed.  *See Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010) (explaining that a Rule 41(a)(1)(A)(i) dismissal is "immediately self-effectuating" without any action by the court); *Florists' Mut. Ins. Co. ex rel. Plains Growers, Inc. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 253, 254–55 (5th Cir. 1973) ("[A] plaintiff is entitled to a dismissal against one defendant under Rule 41(a), even though the action against another defendant would remain pending.").

---

[2] Montoya originally alleged that these routes were subsequently assigned to Escobedo, Lozano, and Rodriguez, but he has expressly abandoned that position on appeal.

No. 09-40288

FXG moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).   The district court concluded that the statute of limitations had expired; the court therefore granted FXG's motion on March 2, 2009, and entered judgment for FXG on April 7, 2009.  Montoya appealed on March 13, 2009, which was rendered effective and timely upon the entry of judgment.  *See* FED. R. APP. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.").

## II.  Standard of Review

We review the district court's dismissal of this lawsuit for failure to state a claim de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Sullivan v. Leor Energy LLC*, 600 F.3d 542, 546 (5th Cir. 2010).  Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face" and thus does not "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).

Further, it is well established—notwithstanding Montoya's objection—that the court of appeals "may affirm a district court's Rule 12(b)(6) dismissal on any grounds raised below and supported by the record." *E.g.*, *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007); *see also, e.g.*, *Jaffke v. Dunham*, 352 U.S. 280, 281 (1957) (per curiam) ("A successful party in the District Court may sustain its judgment on any ground that finds support in the record.").  No cross-appeal is required to support appellate jurisdiction to affirm on alternative grounds. *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924).

No. 09-40288

## III. Discussion

Title 42 U.S.C. § 1985, part of the Civil Rights Act of 1871, creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights under that section. Subsection (1) prohibits conspiracies to prevent federal officers from performing the duties of their offices "by force, intimidation, or threat." § 1985(1). Subsection (3) prohibits conspiracies to "depriv[e] . . . any person or class of persons the equal protection of the laws" and those aimed at preventing a person from lawfully voting. § 1985(3). Subsection (2) concerns conspiracies directed at the right of participation in federal judicial proceedings. In particular, the first half of subsection (2), the provision at issue here, provides that

> [i]f two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

§ 1985(2), (3).

This case is obviously somewhat far afield from the original purposes of the Civil Rights Act of 1871 and of this particular section, the Ku Klux Klan Act. Nevertheless, as the district court noted, the statute has been read by the Supreme Court as protecting any party, witness, or juror from intimidation

6

regardless of any racial animus on the part of the defendant, *Kush v. Rutledge,* 460 U.S. 719, 723–27 (1983), and as encompassing claims of pure economic loss, *Kinney v. Weaver*, 367 F.3d 337, 353 (5th Cir. 2004) (en banc) (citing *Haddle v. Garrison*, 525 U.S. 121, 126 (1998)). These expanded interpretations of the scope of the Act, however,

> do[] not create liability for every adverse action taken against a witness after the witness testifies in a federal case. In addition to the requirement that there be a cognizable injury to the witness or his property . . . , the statute itself contains another limiting principle: the conspirator must threaten or injure the witness "on account of his having so attended or testified"—that is, because of, and by reason of, a person's participation as a witness.

*Kinney*, 367 F.3d at 355. The same logic limits liability for adverse actions taken against parties and witnesses who have not yet testified in the proceeding: in that case, the conspirator must injure the party or witness *in order to* deter him from attending or testifying in federal court. As we explained in *Kinney*, this reading is informed by the Supreme Court's decision in *United States v. Guest*, 383 U.S. 745, 760 (1966), which held that a parallel criminal statute, 18 U.S.C. § 241, "would not reach every conspiracy that affected a federal right, but only a conspiracy whose 'predominant purpose' was to deter or punish the exercise of the federal right." *Kinney*, 367 F.3d at 355 n.22 (quoting *Guest*, 383 U.S. at 760). That purpose is precisely what is missing in this case.

Montoya makes no allegation that FXG or any of the other purported co-conspirators in any respect desired to deter Montoya's attendance or testimony in the 2004 Litigation in federal court. Indeed, all of the allegations in Montoya's complaint suggest the opposite conclusion: Montoya filed the lawsuit in state court, and it was FXG that removed the case to federal court; it was FXG that noticed Montoya's deposition, sent him interrogatories, and sought his testimony in the federal proceeding; and it was FXG that moved for and obtained

summary judgment in the 2004 Litigation in large part on the basis of Montoya's deposition testimony.

Indeed, Montoya's complaint is more analogous to a retaliatory discharge claim for the act of filing the lawsuit (in state court), which this section does not address. The complaint does not plausibly allege that there was a "conspir[acy] to deter, by force, intimidation, or threat, [Montoya] from attending [federal] court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure [him] in his person or property on account of his having so attended or testified," as § 1985(2) requires on its face. The complaint allegations instead suggest that FXG wanted the 2004 Litigation to be in federal court and wanted Montoya to testify in those proceedings: FXG brought this proceeding into a federal court, procured Montoya's testimony in the federal proceeding, and then obtained a federal judgment on the basis of that testimony. Accordingly, without reaching any other issue presented by this appeal, we conclude that Montoya has simply not demonstrated that the purported "conspiracy" here had the unlawful object proscribed by § 1985(2).

## IV. Conclusion

For the reasons stated, we AFFIRM the district court's dismissal.