**REVISED MARCH 23, 2015**
**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 14-30306

JUSTIN SHANE RICHARDSON,

Plaintiff – Appellant,

v.

AXION LOGISTICS, L.L.C.,

Defendant – Appellee.

United States Court of Appeals
Fifth Circuit

**FILED**
March 03, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Middle District of Louisiana

Before REAVLEY, JONES, and ELROD, Circuit Judges.
JENNIFER WALKER ELROD, Circuit Judge:

Justin Shane Richardson appeals the district court's dismissal of his first amended complaint, which alleged that Axion Logistics, L.L.C. terminated his employment in violation of Louisiana's whistleblower statute, Louisiana Revised Statutes § 23:967. Because the complaint stated a plausible claim for relief, we reverse.

**I.**

For the purposes of this appeal, we do not express any view on the ultimate merits of Richardson's case; rather, "we accept all well-pleaded facts

No. 14-30306

as true and view those facts in the light most favorable to the plaintiff." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 146 (5th Cir. 2010) (internal quotation and alteration marks omitted).   The first amended complaint alleges the following facts.   Richardson was briefly employed by Axion from February 7, 2012, to May 21, 2012.   On March 26, 2012, Axion promoted him to general manager of the company's Louisiana operations. While serving as general manager, Richardson became aware that two Axion employees, Jimmy Hall and Don Ward, were fraudulently billing Dow Chemical, an Axion client, for mileage reimbursement.   Richardson first learned of the fraudulent billing when Andy Wheat, whom Hall had told about these billing practices, showed Richardson the discrepant time sheets.

Richardson reported the timesheet manipulations up the chain of command.   Along with Wheat, he called Axion's former president, Steve Seymour, to report the over-billing.   Seymour responded that "it is not like you are telling me something I don't already know."   Seymour had previously tried to fire Hall, in part for his fraudulent billing, but Gary Grant, Axion's CEO, would not allow it.   Instead, Hall had been designated as special projects manager for the Dow job.   Richardson also spoke to Elaine Young, Axion's vice president of administration.   Young discussed the issue with Seymour, who instructed her to bill Dow for the extra time and pay Ward for the extra hours.

Next, Richardson reported the timesheet manipulations via telephone to Grant, who instructed Richardson "that he should not tell anyone about it" until Richardson and Grant could discuss the matter in person.   Richardson then met with Axion's CFO, Jim Konvelman, and informed him of the fraud. During the meeting, Richardson expressed that if Axion was unwilling to notify Dow of the over-billing, he would notify Dow himself.   Konvelman told Richardson to keep quiet until Konvelman had spoken to Grant.   The next day,

2

No. 14-30306

Konvelman suggested that Richardson and Wheat gather evidence to support the allegations.

On May 2, 2012, Richardson and Wheat met with Grant. Grant instructed them to submit a written report of the information that they had on each employee who was working on the Dow account, which they did via e-mail later that same day. The following week, Richardson attended a dinner with Axion management, who spent much of the evening criticizing Richardson's job performance and qualifications. About a week later, Seymour informed Richardson that he had not made a good impression with Grant and the rest of Axion's management. During this conversation, Richardson inquired about the over-billing issue; "Seymour told him there was nothing to discuss, and to be quiet about it."

Seymour terminated Richardson's employment on May 21, 2012, on the stated ground that he "was not a good fit" for the company. Richardson then brought this diversity suit in federal court under the Louisiana whistleblower statute. Richardson alleged that Axion terminated his employment because he reported fraudulent billing practices to Axion's executives and threatened to disclose the fraud to Axion's client. Axion moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Richardson amended his complaint. Axion again moved to dismiss, and the district court granted the motion, entering a dismissal with prejudice. Richardson then initiated this appeal.

## II.

We review a Rule 12(b)(6) dismissal *de novo* and apply the same standard that the district court did. *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

No. 14-30306

*Twombly*, 550 U.S. 544, 570 (2007)).  A complaint is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  We must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation marks omitted). However, while the complaint need not articulate "detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

To state a claim under Louisiana Revised Statutes § 23:967, Richardson must plead facts sufficient to show that "(1) [Axion] violated the law through a prohibited workplace act or practice; (2) [Richardson] advised [Axion] of the violation; (3) [Richardson] then refused to participate in the prohibited practice or threatened to disclose the practice; and (4) [Richardson] was fired as a result of [his] refusal to participate in the unlawful practice or threat to disclose the practice." *Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04, 10); 886 So. 2d 1210, 1216 (La. Ct. App.2004), *writ denied*, 2005-0103 (La. 3/24/05); 896 So. 2d 1036.

## III.

To state a claim, Richardson first had to allege that Axion, rather than simply its employees, violated state law.  *See Fondren v. Greater New Orleans Expressway Comm'n*, 03-1383 (La. App. 5 Cir. 4/27/04), 871 So. 2d 688, 691 (La. Ct. App. 2004) ("The Louisiana Whistleblower Statute targets serious *employer conduct* that violates the law.") (emphasis added); *cf. also Dillon v. Lakeview Regional Med. Ctr. Auxiliary, Inc.*, 2011-1878 (La. App. 1 Cir. 6/13/12), 2012 WL 2154346, at \*5 & n.8, *writ denied*, 2012-1618 (La. 10/26/12), 99 So. 3d 651 (observing that "it could be concluded that the employer must be the actor who

4

violated the law, in order for there to be a cause of action under" § 23:967, and that "there is no indication" that the statute "would encompass unauthorized acts of . . . employees").

The district court concluded that Richardson had failed to plead this element. In particular, the district court concluded that "Richardson merely alleged that some of his co-workers engaged in unethical billing practices, only devoting one conclusory paragraph to stating that such illegal activity was authorized by [Axion]." This was incorrect. While paragraph 5 of the complaint did include an undetailed allegation that Axion authorized the fraudulent billing practices, other portions of the complaint provided the facts necessary to support the allegation. Namely, paragraph 13 alleged that Axion's president tried to fire one of the dishonest employees because of his fraud but the CEO refused to allow it, and paragraph 14 alleges that Axion's president expressly admitted knowledge of the fraud. In addition, paragraph 16 alleges that Axion's president, after the vice president of administration informed him of fraudulent billing, directed that the client be billed (and the dishonest employee be paid) for the extra time. Finally, paragraphs 18 and 18a allege that Richardson reported the fraudulent billing to the CEO and CFO, both of whom instructed him to keep quiet about the matter.

Taken together, these facts make plausible the allegation that Axion authorized the fraudulent billing practices of which Richardson complained. Furthermore, Axion's double-billing constituted a violation of state law. *See* La. Rev. Stat. § 14:70 (defining the crime of false accounting as "the intentional rendering of a financial statement of account which is known by the offender to be false, by anyone who is obliged to render an accounting by the law pertaining to civil matters"). Thus, Richardson successfully pleaded that Axion violated state law through a prohibited workplace act or practice.

5

No. 14-30306

As alternative grounds for affirmance, Axion argues that Richardson failed to plead the three other elements of his claim. Axion's arguments are without merit, and the district court properly rejected them. As the district court noted, Richardson alleged that he reported the violation to Axion and threatened to disclose it if Axion did not do so. Specifically, paragraph 18 alleges that Richardson advised Axion's CEO and CFO of the fraudulent bills, and paragraph 18a alleges that Richardson informed the CFO that if Axion did not tell the client about the fraud, he would notify the client himself. Axion argues that what Richardson reported and threatened to disclose was merely the unauthorized actions of his co-employees, rather than a violation of law by Axion. However, as explained above, the complaint plausibly alleged that Axion authorized the unlawful conduct that Richardson reported and threatened to disclose. Therefore, these allegations were sufficient to plead that Richardson advised Axion of—and threatened to disclose—fraudulent billing practices that it had authorized, rather than simply the indiscretions of a rogue co-worker.

Finally, Richardson plausibly alleged that his threat to disclose the fraudulent billing prompted the termination of his employment, painting a picture of whistleblower retaliation by circumstantial evidence. The complaint alleges that as Richardson reported the fraudulent billing of his co-employees up the chain of command, he encountered mounting resistance from Axion executives. Axion's president directed that the client be billed for the extra time, and when Richardson approached the CFO and CEO, both instructed him to remain quiet about the matter. Richardson alleges that after he threatened to reveal the fraud to the client and he shared evidence of the fraud with the CEO, the CEO called him into a dinner meeting with other executives, during which meeting the executives criticized Richardson's experience and qualifications. The complaint also alleges that Axion terminated Richardson's

6

employment on May 21, 2012—mere weeks after Richardson's meetings with the CFO and CEO. These allegations permit the inference that Richardson's termination came as a result of his whistleblowing, and that the purpose of the dinner meeting was to construct a pretextual justification for the termination. *Cf. Chivleatto v. Sportsman's Cove, Inc.*, 05-136 (La. App. 5 Cir. 6/28/05, 4); 907 So. 2d 815, 819 (La. Ct. App. 2005) (observing that in employment retaliation suits, most employers refuse to admit a retaliatory motive, and therefore "most plaintiffs rely on circumstantial evidence to prove" retaliatory discharge).

## IV.

Richardson's first amended complaint stated a plausible claim for relief under Louisiana Revised Statutes § 23:967. Therefore, we REVERSE the judgment of the district court and REMAND for further proceedings.