# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 15, 2022

Lyle W. Cayce
Clerk

No. 21-20246

Steven Long,

*Plaintiff—Appellant*,

*versus*

Dearborn National Life Insurance Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-1783

Before Barksdale, Stewart, and Dennis, *Circuit Judges*.

Per Curiam:*

This case arises from a dispute involving a long-term disability insurance policy. The district court granted Appellee Dearborn National Life Insurance Company's Rule 12(b)(6) motion to dismiss and dismissed Appellant Steven Long's suit. For the following reasons, we AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20246

## I. Facts & Procedural Background

Steven Long was employed by the University of Texas Medical Branch-Galveston ("UTMB-Galveston") as a registered nurse. UTMB-Galveston offers group long-term disability insurance as part of an employee benefit plan, in which Long participated as an employee, through Dearborn National Life Insurance Company ("Dearborn").

Long stopped working due to disability on May 2, 2016, while covered under the long-term disability policy ("the Policy"). Long's disability resulted from a combination of degenerative disc disease, lower back injuries, and a history of intensive spinal fusion surgery. Long filed an application for long-term disability benefits under the Policy, and by letter dated September 8, 2016, Dearborn approved Long's claim and awarded him monthly benefits in the gross amount of $4,263.55. Long received benefits for the period between July 31, 2016, through July 30, 2018. The Policy defines Total Disability for long-term disability purposes as follows:

> Total Disability or Totally Disabled means that during the first 24 consecutive months of benefit payments due to Sickness or Injury:
>
>> 1. You are continuously unable to perform the Material and Substantial Duties of Your Regular Occupation, and
>>
>> 2. Your Disability Earnings, if any, are less than 20% of Your pre-disability Indexed Monthly Earnings.
>
> After the LTD Monthly Benefit has been paid for 24 consecutive months, Total Disability or Totally Disabled means that due to Injury or Sickness:
>
>> 1. You are continuously unable to engage in any Gainful Occupation, and
>>
>> 2. Your Disability Earnings, if any, are less than 20% of Your pre-disability Indexed Monthly Earnings.

No. 21-20246

In a December 10, 2018 letter ("Initial Denial Letter"), Dearborn terminated Long's long-term disability benefits based on a determination by its own medical consultants that Long had not submitted sufficient evidence to show his inability to perform sedentary work; Dearborn determined that Long could perform full-time work as a nurse consultant, nurse case manager, or telephonic nurse.

Long alleges that Dearborn "disregard[ed] the results of the functional capacity evaluation Plaintiff had undergone, stating that it lacked certain validity measures such as a heart rate assessment and coefficient variables," and "disregarded the medical notes and the opinions of Plaintiff's treating physicians." Long further alleged that, "[t]hough Defendant had the right under the Policy to have Plaintiff examined by a physician or perform its own functional capacity evaluation to assess his eligibility for benefits, it did not do so and instead chose to rely on file reviewing consultants . . . whose opinions . . . differed from Plaintiff's treating physicians[.]" Long appealed the Initial Denial Letter and gave Dearborn "written notice that Dearborn National was in violation of its contractual and statutory duties[.]" Dearborn upheld its initial determination.

Long brought suit against Dearborn in Texas state court, alleging claims for (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3) violations of the Texas Insurance Code, (4) violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), and (5) fraud. Long attached a copy of the Policy as Exhibit 1 to his state court petition.

Dearborn removed the case to federal district court based on diversity jurisdiction; Long moved to remand. The district court denied Long's motion to remand and allowed him to file an amended complaint, instructing him to provide specific factual allegations to support his pleadings. Dearborn

moved to dismiss Long's amended complaint, and the district court directed Long to file a second amended complaint.

Long then filed his Second Amended Complaint ("Complaint"). Dearborn filed another motion to dismiss. The district court held a conference to discuss the motions. Long alleges that, despite being given permission to appear telephonically, the district court inadvertently called his office, rather than his direct line, which resulted in Long's counsel missing the conference. The district court then had a conversation with Dearborn's counsel—and without Long's—which included a five minute "off the record" discussion.

After the conference, the district court ruled in favor of Dearborn and dismissed Long's Complaint. The district court concluded that Long "has pleaded largely vague conclusions and statutory language. He has pleaded no facts of how Dearborn breached the [P]olicy. He must give more than his disagreement with Dearborn's conclusions." The district court dismissed Long's breach of contract claim, and then dismissed all of Long's extra-contractual causes of action, because Long failed to plead a breach of contract. The district court then entered final judgment, and Long appealed.

## II. Standard of Review

We review a district court's dismissal of a complaint *de novo*. *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018). We must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 304–05 (5th Cir. 2015) (quoting *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 146 (5th Cir. 2010)). But we need not accept as true a legal conclusion unsupported by fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter that, when taken as true,

No. 21-20246

states "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This court may affirm the district court's decision "on any ground supported by the record, including one not reached by the district court." *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014) (citing *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)).

## III. Discussion

### A.

Because this is a diversity action, Texas law "provides the elements of the plaintiff's case." *Thrash v. State Farm Fire & Cas. Co.*, 992 F.3d 1354, 1356 (citing *Ayres v. Sears, Roebuck & Co.*, 789 F.2d 1173 (5th Cir. 1986). Long first contends that the district court erred in granting Dearborn's motion to dismiss because he alleged sufficient facts to support each element of his breach of contract claim. "Under Texas law, a plaintiff alleging a breach of contract must show '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach.'" *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (quoting *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App. 1997)).

Long's Complaint alleges the following:

28. Plaintiff has suffered and continues to suffer from a disability as defined in the Policy and/or as defined under Texas state law. At all material times, Plaintiff has complied with all Policy provisions and conditions precedent to qualify for benefits prior to filing suit.

29. In exchange for Plaintiff's continuing compliance with all Policy provisions and conditions precedent to qualify for benefits, Defendant owed Plaintiff a duty to pay him disability

No. 21-20246

benefits on a monthly basis if he became disabled as defined by the Policy.

30. Plaintiff became disabled under the terms of the Policy and made a timely claim for benefits.

31. Defendant, under the terms of the contract of insurance, is indebted to Plaintiff for disability benefits due under the terms of the Policy.

32. Defendant has breached its contract with Plaintiff to timely provide all benefits due to him under the contract.

33. Defendant has failed and refused to honor its contractual obligations under the [P]olicy of insurance that was issued to Plaintiff's employer for the benefit of Plaintiff.

34. As a direct and proximate result of Defendant's breach of its contractual duties, Plaintiff has been damaged and is entitled to actual damages from Defendant in an amount equal to the amount of benefits due under the [P]olicy from July 30, 2018 through the present.

These conclusory allegations are not facially plausible and do not establish a breach of contract claim. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Indeed, Long merely lists conclusory statements that are devoid of factual allegations. Long fails to identify a specific provision of the contract that was allegedly breached, and he fails to show how his performance under the Policy was sufficient.

Further, Long's allegation that Dearborn breached the Policy by choosing to rely on assessments by Dearborn's medical consultants is belied by the Complaint itself, which states that "Defendant had the right under the

6

No. 21-20246

Policy to have Plaintiff examined by a physician or perform its own functional capacity evaluation to assess his eligibility[.]" The mere fact that Dearborn *could* consult their own medical expert or perform its own evaluation does not mean that Dearborn breached the Policy by failing to do so. As Long himself pleads, this was Dearborn's own "right." Thus, on the facts alleged, Long's breach of contract claim fails and was properly dismissed by the district court.

B.

Long also contends that the district court erred in granting Dearborn's motion to dismiss because he alleged sufficient facts to support his causes of action for extra-contractual damages based on Dearborn's breach of its duty of good faith and fair dealing, and for violating the Texas Insurance Code and Texas DTPA.

Long alleges that Dearborn breached a duty of good faith and fair dealing because Dearborn "conducted an unreasonable and incomplete investigation in violation of its duty of good faith and fair dealing, seeking to find ways to deny Plaintiff's claim rather than fairly evaluating it." Long alleges that (a) Dearborn "contravened its own medical reviewer's recommendation that benefits should continue when it denied Plaintiff's claim," (b) "hired a medical file reviewing company, University Disability Consortium ("UDC") . . . known for providing biased and insurer-friendly opinions," and that (c) UDC's physician "provided Dearborn with an opinion that supported that Plaintiff could perform full-time sedentary work, but inappropriately arrived at his conclusion by citing to selectively quoted portions of medical records . . . while at the same time ignoring evidence that contradicted his thesis[.]" This "displayed a refusal to err in favor of Plaintiff or resolve ambiguities and doubt in his favor," and ultimately, "constitutes a breach of Dearborn National's common law duty of good faith and fair

dealing and was bad faith claims handling because Dearborn had no reasonable basis to deny Plaintiff's claim."

Under Texas law, "a cause of action for breach of the duty of good faith and fair dealing exists when the insurer has no reasonable basis for denying or delaying payment of a claim, or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). To prevail on such a claim, the insured must set forth allegations to demonstrate "the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment." *Id.*

Long has failed to plead sufficient facts to support his breach of the duty of good faith claim. While it is true that Texas law has imposed a duty on the insurer to act in good faith and deal fairly with the insured, "there is no duty beyond the contract itself." *Id.* at 460. In other words, absent a breach of the Policy in this case, there is no violation of the insurer's duty to act in good faith and deal fairly with the insured. *See id.*

The materials attached to Long's Complaint establish that Dearborn acted in accordance with the Policy's terms when it denied Long's long-term disability claim after the initial twenty-four-month period. Although Long was eligible for the initial twenty-four months of benefits when his functional impairment precluded him from performing his original, assigned job, Dearborn determined that, after the initial twenty-four months, Long was now able to perform another occupation that he was or could become qualified for. Long's conclusory allegation that Dearborn improperly denied his benefits is insufficient to survive dismissal because it is contradicted by the documents attached to his Complaint. *Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732, 737 (5th Cir. 2014) (citing *Associated Builders, Inc. v. Ala.*

*Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.") (internal citation omitted)).

Further, Long's failed breach of contract claim defeats this claim, as he has alleged no salient facts beyond Dearborn's alleged breach of contract. Moreover, Long's allegations are conclusory at best. Long does not allege that he provided specific medical evidence that demonstrated that he could not perform the sedentary jobs listed by Dearborn. Instead, Long merely alleged that Dearborn relied on assessments "contrary to the credibility determinations of medical providers"; that "Dearborn's claim review displayed a refusal to err in favor of Plaintiff"; that evidence was "cherry-picked"; that "Dearborn had no reasonable basis to deny [his] claim"; and that Dearborn was aware that denying his claim "created a real risk of causing him extreme hardship and oppression financially[.]" Long's allegation that Dearborn is liable for bad faith because it engaged an outside reviewer, UDC, to assist in its review is also conclusory. Long does not allege that this violated the terms of the Policy, nor does he allege that UDC was biased in its review of Long's claims: just that UDC is "known for providing biased and insurer-friendly opinions." Such an assertion, supported only by an unreported district court case from Nevada, is nothing more than a conclusory allegation. Long's claim of breach of duty of good faith and fair dealing was properly dismissed.

Long's claims that Dearborn violated the Texas Insurance Code similarly fail, as Long merely lists the elements of each cause of action, without specific factual allegations. For example, Section 541.060(a)(2)(A) of the Texas Insurance Code prohibits an insurer from refusing to effectuate "a prompt, fair, and equitable settlement of . . . a claim with respect to which liability has become reasonably clear." Tex. Ins. Code Ann. § 541.060.

No. 21-20246

Long's Complaint alleges the following with respect to Section 541.060(a)(2)(A):

> Defendant violated Section 541.060(a)(2)(A) of the Texas Insurance Code by continuing to deny Plaintiff despite having already received all necessary evidence to substantiate his claim and recognize that its liability was reasonably clear. Defendant received all necessary evidence to recognize liability under the Policy prior to its initial denial on December 10, 2018, and was provided with even more evidence substantiating Plaintiff's claim when receiving Plaintiff's appeal on June 27, 2019.

Long's allegations amount to no "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Long's remaining Texas Insurance Code claims fare no better, as they too amount to no more than formulaic recitations of the elements of each cause of action. The district court therefore properly dismissed Long's Texas Insurance Code claims.

Finally, Long's claim for violations of the DTPA also fails, as it is merely a conclusory allegation devoid of any facts. Long's Complaint alleges the following:

> 55. Texas' Deceptive Trade Practices-Consumer Protection Act (DTPA) provides additional protections to consumers who are victims of deceptive, improper or illegal practices. Defendant's violations of the Texas Insurance Code create a cause of action under the DTPA. As such, Defendant's violations of the Texas Insurance Code, as set forth above, specifically violate the DTPA as well.

> 56. The violations by Defendant are also "unconscionable" as that term is legally defined, and subjects Defendant to liability for such "unconscionable" acts as set forth by the DTPA.

No. 21-20246

This is insufficient to state a claim for violations of the DTPA, and the district court properly dismissed this claim.

## IV. Conclusion

For the foregoing reasons, the district court's judgment dismissing Long's claims against Dearborn is AFFIRMED.[1]

---

[1] Because we conclude that the district court properly dismissed Long's claims pursuant to Fed. R. Civ. P. 12(b)(6), we need not address his argument that the case should be reassigned to a different judge on remand.